UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

LARRY MAY, JOE KIMBROUGH,
CYNTHIA STOKES, RICHARD KING,
ANDREW WASHINGTON, JAMES DYSON
TANYA GLOVER, TIMOTHY ALLEN,
ROBERT WILLIAMS, KIMBERLEY GARZA,
APRIL LEGREAIR, PATTI TURNER,
RAVI YELAMANCHI, AURELIA MORGAN,
MAURIA DAVIS, HOWARD HILL, JR.,
BRUCE BAKER, GILBERTO GARZA,
JAY LEWIS, JOHN HALL, TENEIA CLEMENT,
TONYA TUCKER, ALFRED TEASLEY, MARCUS WISEMAN,
LEMONT BOYD, ROGER GREENWOOD, and
HAROLD L. ROBINSON, SR.
individuals,

Case No: 2:21-cv-_____-___-___
Hon.:
Mag.:

      Plaintiffs,

-v-

GREAT LAKES WATER AUTHORITY
a State Agency, AFSCME LOCAL 2920,
a Labor Union, LAKESHORE GLOBAL CORPORATION,
a Michigan Domestic Profit Corporation,

      Defendants.

_____/

THE RUBINSTEIN LAW FIRM
Jan Jeffrey Rubinstein (P57937)
Ryan Richardville (P77335)
Attorneys for Plaintiffs
30150 Telegraph Road, Suite 444
Bingham Farms, MI 48025
(248) 220-1415

_____/

There is no other pending or resolved civil action arising out of the
same transaction or occurrence as alleged in the complaint.

**PLAINTIFFS' COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiffs, by and through their attorneys, THE RUBINSTEIN LAW FIRM, and for their Verified Complaint and Jury Demand against Defendants, states the following in support:

<u>**JURISDICTION AND VENUE**</u>

1.  This is an action for workplace discrimination and harassment based upon the protected classes of race, age, national origin, and sex, including claims for hostile work environment, brought pursuant to the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*. ("ELCRA") and the common law of the State of Michigan, for workplace discrimination and harassment based on protected classes of race, national origin, and sex brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), Violations of the Age Discrimination Employment Act (29 USC 621 *et. seq.)*, Violations of the Equal Pay Act [29 USC 206(d)], Violations of the Lilly Ledbetter Fair Pay Act of 2009, Violations of the Fair Labor Standards Act (USC 203), Violation of the Family Medical Leave Act of 1993 (29 USC 2601), Violations of the Public Employment Relations Act (MCL 423.201), and Violations of the National Labor Relations Act (29 USC 151).

2.  Plaintiff, LARRY MAY, is an adult resident of the State of Michigan who currently resides at 18365 Pierre Drive, Clinton Twp., MI 48038.

3.  Plaintiff, JOE KIMBROUGH, is an adult resident of the State of Michigan who currently resides at 1600 Antietam, Apt. 1405, Detroit, MI 48207.

4.  Plaintiff, CYNTHIA STOKES, is an adult resident of the State of Michigan who currently resides at 25350 Basin Street, Apt. 126, Southfield, MI 48033.

5.  Plaintiff, RICHARD KING, is an adult resident of the State of Michigan who currently resides at 15480 Carlisle, Detroit, MI 48205.

6.  Plaintiff, ANDREW WASHINGTON, is an adult resident of the State of Michigan who currently resides at 5425 West Outer Drive, Detroit, MI 48235.

7.  Plaintiff, JAMES DYSON, is an adult resident of the State of Michigan who currently resides at 13600 West Outer Drive, Redford, MI 48239.

8.  Plaintiff, TANYA GLOVER, is an adult resident of the State of Michigan who currently resides at 18528 Reed Street, Melvindale, MI 48122.

9.  Plaintiff, TIMOTHY ALLEN, is an adult resident of the State of Michigan who currently resides at 15755 Glenwood Street, Detroit, MI 48205.

10. Plaintiff, ROBERT WILLIAMS, is an adult resident of the State of Michigan who currently resides at 11726 Lansdowne Street, Detroit, MI 48224.

11. Plaintiff, KIMBERLEY GARZA, is an adult resident of the State of Michigan who currently resides at 4339 Casper Street, Detroit, MI 48210.

12. Plaintiff, APRIL LEGREAIR, is an adult resident of the State of Michigan who currently resides at 8858 Warwick, Detroit, MI 48228.

13. Plaintiff, PATTI TURNER, is an adult resident of the State of Michigan who currently resides at 14607 Strathmoor, Detroit, MI 48227.

14. Plaintiff, RAVI YELAMANCHI, is an adult resident of the State of Michigan who currently resides at 3124 Cedar Crest Drive, Troy, MI 48083.

15. Plaintiff, AURELIA MORGAN, is an adult resident of the State of Michigan who currently resides at 17255 Winston, Detroit, MI 48219.

16. Plaintiff, MAURIA DAVIS, is an adult resident of the State of Michigan who currently resides at 6110 Drexel Street, Detroit, MI 48213.

17. Plaintiff, HOWARD HILL, JR., is an adult resident of the State of Michigan who currently resides at 20430 Goddard, Detroit, MI 48234.

18. Plaintiff, BRUCE BAKER, is an adult resident of the State of Michigan who currently resides at 25630 Filmore Place, Southfield, MI 48075.

19. Plaintiff, GILBERTO GARZA, is an adult resident of the State of Michigan who currently resides at 2052 23rd Street, Detroit, MI 48216.

20. Plaintiff, JAY LEWIS, is an adult resident of the State of Michigan who currently resides at 14499 Eastburn Street, Detroit, MI 48205.

21. Plaintiff, JOHN HALL, is an adult resident of the State of Michigan who currently resides at 12560 2nd Ave., Southgate, Michigan 49185.

22. Plaintiff, TENEIA CLEMENT, is an adult resident of the State of Michigan who currently resides at 48541 S. I94 Service Drive, Apt. 308, Belleville MI 48111.

23. Plaintiff, ALFRED TEASLEY, is an adult resident of the State of Michigan who currently resides at 8710 E. Outer Drive, Detroit, MI 48213.

24. Plaintiff, MARCUS WISEMAN, is an adult resident of the State of Michigan who currently resides at 18990 Ardmore Street, Detroit, MI 48235.

25. Plaintiff, TONYA TUCKER, is an adult resident of the State of Michigan who currently resides at 22720 Civic Center Drive, Apt. B5, Southfield, MI 48033.

26. Plaintiff, ROGER GREENWOOD, is an adult resident of the State of Michigan who currently resides at 15335 Appoline Street, Detroit, Michigan 48227.

27. Plaintiff, LEMONT BOYD, is an adult resident of the State of Michigan who currently resides at 21810 Church Street, Oak Park, MI 48237.

28. Plaintiff, HAROLD L. ROBINSON, SR., is an adult resident of the State of Michigan who currently resides at 25326 Lynford Street, Farmington Hills, MI 48336.

29. Defendant, GREAT LAKES WATER AUTHORITY, is a State Agency, with its principal place of business located at 735 Randolph, Suite 1900, Detroit, Michigan 48226.

30. Defendant, AFSCME LOCAL 2920, is a labor union, with its principal place of business located at 5555 Conner Street, Detroit, Michigan, 48213.

31. Defendant, LAKESHORE GLOBAL CORPORATION, is a domestic for-profit corporation, with its principal place of business located at 7310 Woodward Ave., Ste. 500, Detroit, MI 48202.

32. The events giving rise to this cause of action invoke questions of federal law, over which this Court has original jurisdiction under 28 U.S.C. Sec. 1331.

33. Further, pursuant to 28 U.S.C. Sec. 1367(a), this Court also has supplemental jurisdiction over Plaintiffs' state law claims that are related to the action within this Court's original jurisdiction, being that the state law claims arise out of the same action or occurrence as the federal law claims.

34. Venue is proper in this judicial district under 28 USC Sec. 1391(b)(1) and (2).

## GENERAL FACTUAL ALLEGATIONS

35. Plaintiff incorporates and realleges all above paragraphs as if set forth in full herein.

36. Defendant, THE GREAT LAKES WATER AUTHORITY was created in the fall of 2014 under a United States bankruptcy court order issued as part of the City of Detroit bankruptcy proceedings.

37. The Detroit City Council voted to join the authority in September 2014 by a 7–2 vote, and the county commissions of Wayne, Oakland, and Macomb counties voted to join in October 2014.

38. Defendant GLWA's board held its first meeting on December 12, 2014.

39. On June 12, 2015, a forty (40) year lease deal was created by a 5–1 vote of the Great Lakes Water Authority board.

40. The assumption of much of Detroit Water and Sewerage Department's (DWSD) operations by the Great Lakes Water Authority allowed Detroit to fund improvements to their aging water infrastructure, such as repairs to old treatment facilities and leaking pipes.

41. Under the Lease Agreement, the lease payments to Detroit must be used for water purposes and cannot be diverted to the general fund.

42. GLWA formally assumed operations from the Detroit Water Sewer District on January 1, 2016.

43. The assumption of Detroit's operations and debt is under a 40-year lease that GLWA has over the City of Detroit's water system.

44. Further, the deal allowed DWSD's workforce to be reduced from around 1,400 to around 500 people.

45. Currently, GLWA has approximately 1,000 employees.

6

46. The employees in this matter were all brought from DWSD to GLWA, under false promises and pretenses that they would be entitled to fair compensation and opportunities for advancement.

47. Further, the employees named in this matter each have been informed that they were labeled as "red-circle" employees, due to coming from DWSD as legacy employees to GLWA upon the transfer of authority from one entity to the other.

48. It has been discovered by all named Plaintiffs through the Freedom of Information Act ("FOIA") that in reality, the disparate treatment that "red-circle" employees have been receiving has actually been based on several other factors, in pertinent part, the Plaintiffs' races, their age, and their genders.

49. Moreover, the Plaintiffs in this matter have discovered that despite bringing decades of experience in efforts to make GLWA and the City of Detroit a better place, GLWA has elected to hire individuals who are Caucasian/white/males, with little to no experience, only to pay these individuals more than Plaintiffs are being paid at their "cap" due to being "red-circle" employees.

50. Essentially, several Plaintiffs have had to train people hired off the street with no experience for job functions at a higher level and pay than that of Plaintiffs.

51. As such, Plaintiffs have brought several claims against Defendants, including violations of Title VII for discrimination (42 USC 2000, *et. seq.),* Violations of the Elliot Larsen Civil Rights Act (MCL 37.2101), Violations of the Age Discrimination Employment Act (29 USC 621 *et. seq.)*, Violations of the Equal Pay Act [29 USC 206(d)], Violations of the Lilly Ledbetter Fair Pay Act of 2009, Violations of the Fair Labor Standards Act (29 USC 203), Violation of the Family Medical Leave Act of 1993 (29 USC 2601), Violations of

the Public Employment Relations Act (MCL 423.201), and Violations of the National Labor Relations Act (29 USC 151).

### FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF LARRY MAY

52. Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

53. Plaintiff Larry May is a fifty-six (56) year old African American male.

54. Plaintiff Larry May's credentials include a Commercial Driver's License, a Blueprint Reading Certification, and a Electrical Certification, as well as working as a plant mechanic for a total of ten (10) years.

55. Plaintiff Larry May was employed by the City of Detroit in its water department ("DWSD") for approximately four (4) years in a maintenance mechanic position.

56. Upon the GLWA formation in 2016, Plaintiff Larry May was not immediately selected to be a member of the "pilot team" of employees who were transitioned in from Detroit Water and Sewer Department ("DWSD").

57. During this period, Plaintiff Larry May was assigned to report to co-Plaintiff Timothy Allen.

58. Both Timothy Allen and Larry May continued to work at the facility owned by GLWA as DWSD employees.

59. During this period, Larry May continued to work in a plant support role.  During this time, Mr. May fell through a grate in the floor at one of Defendant GLWA's plants and landed on a conveyor, as a result, his labrum muscle was torn.

60. While on medical leave, GLWA offered Mr. May a position within GLWA and instructed him that he must immediately resign from DWSD.

61. GLWA pressured Mr. May into accepting this position, informing him that "if he did not accept, he would not have a job."

62. Mr. May accepted a position with GLWA, and his starting pay rate at that time was $42,000.00 per year.

63. At the time of his hiring by Defendant GLWA, Plaintiff May accepted a position as Plant Maintenance Tech I which required only a high school diploma or GED, despite Mr. May having the aforementioned qualifications.

64. Plaintiff May was a valuable asset to Defendant in that he alone had always carried out his work in an exemplary fashion.

65. Several Plaintiffs, including Mr. May, discovered through utilization of the Freedom of Information Act ("FOIA") that there were, and still exist to date, severe pay discrepancies amongst people of color in comparison to others.

66. By way of specific example, Plaintiff May's co-worker, Mark Christie, a white man, negotiated a position as a Level II Technician, in comparison to Mr. May's Level I Technician position.

67. Mr. Christie was compensated $50,000.00 starting salary, despite having no credentials in comparison to Mr. May's decades of experience.

68. This issue was no coincidence, Defendant GLWA also hired a white individual named Justin Seal, despite having no verification to his credentials, at a rate of $23.00 per hour or $47,840.00 per year.

69. Additionally, another white individual, named Jay Cleveland, was able to be hired from outside of the company and permitted to negotiate a higher pay and better benefits than Mr. May, despite having significantly less experience.

70. Mr. May, among many of the other Plaintiffs in this matter, was essentially forced to train the individual working over him while that individual would enjoy professional titles, perks, and better pay than that of Plaintiff May.

71. Mr. May raised this issue to the appropriate channels in GLWA's Human Resources and was only given the answer that "the management team makes the decisions." Mr. May to date, has been continued to be spun back and forth through numerous channels in attempts to raise concerns about these issues.

72. Further, Mr. May was promised advancement and pay raises through his position with GLWA. However, no raises were given, and management has continually moved the goalpost in terms of the qualifications Mr. May will need for advancement.

73. Additionally, in his employment with GLWA, Mr. May was forced to move into Defendant, the Local 2920 Clerk's Union. However, the Union has repeatedly failed to bargain in terms of pay rates and 2.0x pay ("Double-Time Pay") for Sunday hours, despite their duty to their members that they do so.

74. Further, Defendant, the Local 2920 Clerk's Union has failed to address numerous grievances raised regarding the racial, age, and gender discrimination ongoing at the GLWA.

### FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF ANDREW WASHINGTON

75. Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

76. Plaintiff Andrew Washington is a sixty-two (62) year old African American male.

77. Plaintiff Andrew Washington's credentials include a being a journeyman electrician for over 26 years, as well as working as an electrician for the City of Detroit for a total of thirty (30) years.

78. Plaintiff Washington was forced to retire from DWSD in September 2016.  He began working with Defendant, GLWA, in February 2017.

79. Plaintiff Washington worked with GLWA for approximately 3.5 years, until September 11, 2020.

80. Plaintiff Washington essentially stopped working for Defendant due to the blatant failure to fulfill on its word of advancement that Mr. Washington would receive in the scope of working for GLWA.

81. Thereafter, Mr. Washington began working for a contract house called Lakeshore Global on September 28, 2020.

82. As part of Mr. Washington's assignment through the contract house, he was placed at the exact same plant that he had previously worked at, belonging to GLWA.

83. Subsequently, Mr. Washington was laid off October 2, 2020.  The reason given for his layoff was that he was "previously employed at a contractor holder's company" despite the same not being true.

84. Plaintiff Washington Filed complaints on his union, IBEW 58, with Michigan's Union Board, and EEOC.

85. Further, Mr. Washington received an email from Dan Alford, Director: stating that "I do not want former GLWA electricians to return to work at the WRRF or CSOs as part of Lakeshore's team.  Please ensure that tomorrow will be Mr. Washington's last day."

86. Clearly, the fashion in which Mr. Alford and GLWA carried this out amounted to retaliation, as the reason that Mr. Washington was given for leaving GLWA was blatantly false.

87. In reality, numerous electricians have quit or retired from GLWA, and through the Local 58 International Brotherhood of Electricians, been rehired through contractors such as non-party Lakeshore Global, and continued working through a contract house, for GLWA for multiple years.  Notably, these employees who engaged in the same career path as Mr. Washington, albeit without consequence, were white males.

88. Additionally, Defendants GLWA and Lakeshore Global denied Mr. Washington's unemployment application, stated that he had quit, despite the fact that he was actually laid off on October 2, 2020.  Thus, Mr. Washington had no source of income for several months due to the egregious acts of Defendants GLWA and Lakeshore Global.

**FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF RAVI YELAMANCHI**

89. Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

90. Plaintiff Ravi Yelamanchi is a fifty-nine (59) year old Indian Male.

91. Plaintiff Yelamanchi migrated to the United States in 1988, and began working for DWSD as an Engineer in 1994.

92. At all times that Yelamanchi was an employee with DWSD, he conducted himself in an exemplary fashion and excelled in his role as an engineer.

93. In January, 2016, Plaintiff Yelamanchi switch to employer-Defendant GLWA, where he held the same title as an Engineer.

94. Seemingly immediately, despite Mr. Yelamanchi having twenty-two (22) years of experience as an Engineer with DWSD, he began receiving poor work performance reviews due to "communication" from his management at GLWA.

95. These "communication" issues are new in that Mr. Yelamanchi had not received these types of poor reviews during his tenure with DWSD.

96. Further, Mr. Yelamanchi received two suspensions from work recently, both in which GLWA cited "poor work performance", as well as "communication" as issues.

97. Notably, Mr. Yelamanchi observed that within his group, only individuals over the age of sixty (60) were served with these suspensions.

98. The first suspension Mr. Yelamanchi received was for five (5) days, and the second was for ten (10) days, despite no one else on his teams receiving suspensions for performance that did not solely fall on Plaintiff Yelamanchi.

99. Additionally, the second ten (10) day suspension was served on Mr. Yelamanchi almost immediately after returning from sick leave in March 2020, despite him being out of work on leave.

100.    As a result of Mr. Yelamanchi beginning to be harassed by management for his "communication" issues – which upon information and belief, are due to his accent, Mr. Yelamanchi has suffered from extreme stress and depression – Mr. Yelamanchi has also been taking English classes for several years in efforts to resolve the issues for which he is

continuously being cited for – however the beratement from management continues and Mr. Yelamanchi still suffers from unreasonable treatment at work as a result.

101.    Additionally, Plaintiff Yelamanchi has discovered through the Design Group at GLWA, that the Newly hired Engineers with Level I classifications are currently being paid at a higher starting rate than former DWSD employees are at Engineer Level III.

102.    Moreover, on multiple occasions it has been discovered that Level I Engineers are being promoted directly to Engineer III's, without any of the requisite experience.

103.    Finally, Engineers without PMP Certifications are becoming Managers, Directors and COO, whereas to be an Engineer III requires a CAPM Certification, and to be an Engineer IV requires a PMP certification – however this have been overlooked and certain staff members have been given this advancement without the appropriate certifications.

## FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF HOWARD HILL, JR.

104.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

105.    Mr. Howard Hill is a forty-two (42) year old, African American male.

106.    Plaintiff Hill worked with DWSD for fifteen (15) years – both as a Sewage Attendant and eventually through promotion – as a sewage operator.

107.    At all times relevant, Mr. Hill did not have a valid Michigan Driver's License – because he did not need one for his role at DWSD. This fact was also known to DWSD.

108.    In 2015, Mr. Hill transferred from DWSD to GLWA, and was given the exact same job function and the exact same job title as he had at DWSD.

109.     On several occasions, Mr. Hill made GLWA aware that he did not have a Michigan Driver's License, and again, this was not a requirement for his job function – either with DWSD or GLWA.

110.     When Mr. Hill originally filled out the application to work for GLWA in 2015 – he wrote in the application that he did not have a valid driver's license.

111.     Further, during his employment with GLWA, Mr. Hill was denied a promotion due to "lack of a driver's license" despite the fact that a valid driver's license was not a part of the requirements for that position.

112.     In December, 2018 – Mr. Hill was notified that he had "30 days to get his affairs in order" meaning he had 30 days to obtain a driver's license.

113.     Due to this completely unrealistic obligation being imposed in such a short timeframe – Mr. Hill was wrongfully terminated on January 15, 2019.

114.     At no time, did anyone from Human Resources or Supervision at GLWA speak to Mr. Hill about his situation, why he did not have a driver's license, and what would need to be done to obtain his driver's license.

115.     Upon information and belief, Mr. Hill was terminated due to his race, as GLWA had no underlying legitimate reason for his termination. Further, the form and fashion of GLWA's termination breached Mr. Hill's Collective Bargaining Agreement with AFSCME Local 2920.

## FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF MAURIA DAVIS

116.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

117.     Plaintiff, Mauria Davis, is a 44-year-old African American male.  Plaintiff Davis is also a diabetic and asthmatic.

118.     Plaintiff Davis began working with DWSD in 2010 as a Water/Sewage Attendant.

119.     Plaintiff Davis began working with Defendant GLWA in 2016, under an identical role, the only difference being that his title was changed from "Sewage Plant Attendant" to "Sewage Plant Technician."

120.     At all times relevant, despite promises by Defendant GLWA that Plaintiff would receive opportunities for raises and advancement, Plaintiff Davis never received such opportunities.  In fact, Plaintiff Davis was informed by management that he was labeled a "Red Circle" employee – meaning his pay rate at DWSD was his salary cap at GLWA.

121.     When these issues were discussed with HR, Plaintiff Davis was informed that he was denied advancement due to a lack of a driver's license. At all times relevant, Mr. Davis did not have a valid Michigan Driver's License – because he did not need one for his role at DWSD or at GLWA.  This fact was also known to GLWA.

122.     When Mr. Davis originally filled out the application to work for GLWA in 2015 – he wrote in the application that he did not have a valid driver's license.

123.     In 2018 – Mr. Davis was notified that he was being terminated due to his "lack of a driver's license."

124.     In 2019, GLWA brought Plaintiff Davis back.  Due to medical complications, Plaintiff Davis timely filed that he was taking FMLA leave due to numerous health issues he was having.

16

125.    When Plaintiff Davis returned to work – he was immediately handed a ten (10) day suspension for no-call no-showing to work.

126.    Despite Plaintiff's timely written information regarding his medical condition and need to take leave – he was terminated on October 15, 2020 for a second time without valid cause, and without subsequent violations following his ten (10) day suspension.

127.    Upon information and belief, Mr. Davis was terminated due to his race, as GLWA had no underlying legitimate reason for his termination.  Further, the form and fashion of GLWA's termination breached Mr. Davis' Collective Bargaining Agreement with Union 2920.

128.    Mr. Davis' Union, Defendant AFSCME Local 2920 – also failed to collectively bargain in good faith on behalf of Plaintiffs, causing them to lose benefits such as shift premiums, and Defendant Local 2920 further failed to investigate these issues on Mr. Davis' behalf and failed to timely grieve Defendant GLWA for their payscale discrimination and wrongful termination.

### FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF APRIL LEGREAIR

129.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

130.    Plaintiff April Legreair is a forty-seven (47) year old African American female.

131.    Plaintiff April Legreair was employed by the City of Detroit in its water department ("DWSD") for approximately four (4) years in a position as a Sewage Plant Attendant.

132.    In 2016, Plaintiff Legreair was offered a position as a Sewage Plant Technician.

133.    GLWA pressured Plaintiff Legreair into accepting this position, informing her that "if she did not accept, she would not have a job."

134.    Plaintiff Legreair was a valuable asset to Defendant in that he alone had always carried out his work in an exemplary fashion.

135.    Several Plaintiffs discovered through utilization of the Freedom of Information Act ("FOIA") that there were, and still exist to date, severe pay discrepancies amongst people of color in comparison to others.

136.    By way of specific example, on numerous occasions, Defendant GLWA would hire white individuals outside of the company without any qualifications to fulfill management roles above Plaintiff Legreair.

137.    When Plaintiff Legreair would apply for advancement, she would be unable to complete the application, due to "lacking certifications" however, these same white individuals who were hired from outside of GLWA also lacked certifications and yet, were fulfilling these same positions Plaintiff Legreair would apply for.

138.    Remarkably, Plaintiff Legreair sent emails to Operation Manager Luther Blackburn, requesting to be moved to a different team if a position opened.  In response, she was informed that there were "no vacancies."

139.    Thereafter, the same team she sought a vacancy on moved a white individual who was hired from outside of GLWA to fulfill a position that Plaintiff Legreair was told "was not vacant."

140.     Additionally, despite being an exemplary employee with GLWA, Defendant GLWA has refused to give Plaintiff Legreair any raises – citing that it was because she had received one single disciplinary action from DWSD during her four (4) year tenure there.

141.     Plaintiff Legreair, among many of the other Plaintiffs in this matter, was essentially forced to train the individual working over her while that individual would enjoy professional titles, perks, and better pay than that of Plaintiff Legreair.

142.     Plaintiff Legreair has also discovered that in order to get FMLA leave, you must certify – notably, failure to do so will result in a disciplinary action such as a suspension – however there have been several occasions where individuals who were white in color had this same issue and were only handed an unpaid day off, rather than a legitimate suspension, as some employees such as Plaintiff Mauria Davis had faced.

143.     Plaintiff Legreair raised these issues to the appropriate channels in her role on the negotiations team, and further informed them that individuals working at the Water Resource Recovery Facility ("WRFF") were being treated poorly, in terms of pay rates, Paid Time Off, FMLA Leave, and likewise, both due to being prior DWSD employees, due to race, and due to union status.

144.     Seemingly in retaliation, after raising these issues, Plaintiff Legreair was placed on a rotational 12-hour per day shift, despite not requesting so and despite requests that she remain on a normal eight (8) hour shift.

145.     Further, Plaintiff Legreair was placed into a Clerk's union, Defendant Local 2920, based on the role that Defendant GLWA assigned her.

146.     Defendant, GLWA, failed to collectively bargain with the Local 2920 Clerk's Union that Plaintiff Legreair was placed into in good faith.  Upon information and belief, despite setting up a "negotiation process", GLWA had already signed a contract with Local 2920 and as such, the employee's requests were not heard.

147.     Defendant, the Local 2920 Clerk's Union also has failed to address numerous grievances raised regarding the racial, age, and gender discrimination ongoing at the GLWA.

**FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF AURELIA MORGAN**

148.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

149.     Plaintiff Aurelia Morgan is a fifty-four (54) year old African American female.

150.     Plaintiff Aurelia Morgan was employed by the City of Detroit in its water department ("DWSD") for approximately fifteen (15) years in her role as a Sewage Plant Operator.

151.     Upon the GLWA formation in 2016, Plaintiff Aurelia Morgan was immediately selected to be a member of the "pilot team" of employees who were transitioned in from Detroit Water and Sewer Department ("DWSD").

152.     Defendant, GLWA made numerous representations and promises to Plaintiff Morgan, by way of specific example, she was told that "in order to have a job" she would need to resign from DWSD and apply to be on the Pilot Team with GLWA.

153.     Further, GLWA led Plaintiff Morgan to believe that she would not have a job if she did not resign from DWSD and apply to GLWA.

154.     Plaintiff Morgan was informed by representatives of GLWA that she would get an increase when a letter was signed to begin working for GLWA. Plaintiff Morgan signed in October 2015, and never received the particular pay increase promised to her.

155.     At the time of his hiring by Defendant GLWA, Plaintiff Morgan accepted a position as Plant Technician I which required only a high school diploma or GED, despite Plaintiff Morgan having the aforementioned qualifications.

156.     Plaintiff Morgan was a valuable asset to Defendant in that she alone had always carried out her work in an exemplary fashion.

157.     Several Plaintiffs, including Mr. May and Ms. Morgan, discovered through utilization of the Freedom of Information Act ("FOIA") that there were, and still exist to date, severe pay discrepancies amongst people of color in comparison to others.

158.     By way of specific example, Plaintiff Morgan has routinely observed that people were being hired off the street without experience, who were permitted to negotiate their pay. Further, Ms. Morgan has observed that other white individuals have come from DWSD with less years of service and less experience, who were making less pay than Ms. Morgan at DWSD, and are now being paid higher than her at Defendant GLWA. These individuals do not have the required certifications for advancement either.

159.     Moreover, when Plaintiff Morgan would raise these issues to management, they would not give her any sort of advancement or pay raise – Plaintiff Morgan has had one (1) $0.35/hr raise over the course of her five (5) years with GLWA, despite employees coming in off of the street and getting merit raises routinely.

160.     Ms. Morgan, among many of the other Plaintiffs in this matter, was essentially forced to train the individual working over her while that individual would enjoy professional titles, perks, and better pay than that of Plaintiff Morgan.  Recently, Plaintiff Morgan had to train a Level III (3) technician with a "C" Certification, despite having less experience than her, despite still retaining the title of a Level (I) technician with her five (5) years of experience at GLWA and fifteen (15) years of experience at DWSD doing the exact same job, for a total of twenty (20) years' experience.

161.     Ms. Morgan raised this issue to the appropriate channels in GLWA's Human Resources ("OD" Department") and was only given the answer that "the management team makes the decisions."  Ms. Morgan to date, has been continued to be spun back and forth through numerous channels in attempts to raise concerns about these issues.

162.     Further, Ms. Morgan was promised advancement and pay raises through her position with GLWA.  However, no raises were given, and management has continually moved the goalpost in terms of the qualifications Ms. Morgan will need for advancement.

163.     Recently, Ms. Morgan has been informed that she will need to obtain a "D" License certification or she will potentially lose her job completely, despite the fact that this was not a condition of her prior position in the exact same role with DWSD, and further, despite the fact that the plant director does not have the necessary licensure to operate the plan in which Ms. Morgan is employed at.

164.     Plaintiff Morgan has also discovered that in order to get FMLA leave, you must certify – notably, failure to do so will result in a disciplinary action such as a suspension – despite no information regarding this certification requirement existing in the employee handbook.

165.    At one point, Ms. Morgan was handed a five (5) day suspension for "going AWOL" for a month on FMLA leave - however there have been several occasions where individuals who were white in color had this same issue and were only handed an unpaid day off, rather than a legitimate suspension, as some employees such as Ms. Morgan and co-Plaintiff Mauria Davis had faced.  Ms. Morgan was never given notice regarding her FMLA leave running out due to "not certifying" and have to have paperwork backdated by her Doctor to show that she had a legitimate reason for taking FMLA Leave.

166.    Seemingly in retaliation, after raising these issues to management, Plaintiff Morgan was placed on a rotational 12-hour per day shift, despite not requesting so and despite requests that she remain on a normal eight (8) hour shift, due to obligations with her (17) year old minor child.  At all times relevant, Plaintiff Morgan was informed that GLWA would accommodate her schedule for care with her minor child, however such has not been the case.

167.    Additionally, Ms. Morgan has suffered from disparate treatment in terms of clocking in.  By way of specific example, Ms. Morgan has been written up for clocking in at 7:00:31 when her designated clock-in time is 7:00:00.  Other teams throughout the WRFF Plant do not enforce this procedure.

168.    Further, since making complaints to HR, agents and employees of Defendant GLWA have done things to make the workplace an increasingly dangerous place to work.

169.    By way of specific example, Supervisor Dan Alford has ordered that many of the telephones in the lower level of the premises, which were to be used for emergency purposes, be taken away.  Now as a result of this, Plaintiffs such as Ms. Morgan cannot call for help in the event of an emergency when underground.  Mr. Alford has ignored

23

warnings that a Plant Employee died due to being unable to use the phones when underground, approximately twenty (20) years ago when the plant was owned by DWSD.

170.     Additionally, Ms. Morgan's Supervisor, Michael Coyote, has now taken egregious acts against her, such as making Ms. Morgan do certain indoor tasks, such as cleaning up trash and sweeping.  Further, he has instructed her to do maintenance work indoors with asbestos exposure, despite the fact that she has made the staff aware of her chronic asthma condition.

171.     Michael Coyote, seemingly in retaliation for prior disagreements, has instructed Ms. Morgan that she would be "permanently assigned to indoor work" such as incineration duties, and did not care that this would put Ms. Morgan at risk for asthma attacks.  Recently, Ms. Morgan had an asthma attack so severe due to this indoor asbestos exposure that she had to leave work early and seek medical treatment.

172.     Plaintiff Morgan has also observed disparate treatment in her role on the safety committee – when she would bring up issues to management, such as Luther Blackburn, and offer proposed solutions, management would elect to do nothing – however when a white co-worker would bring up the same issue, Management would work with them to solve the issue.

173.     Further, Defendant GLWA made representations that Plaintiff would have her sick leave rolled over from DWSD to GLWA – however GLWA did not do that, instead, coming up with a system where Plaintiff Morgan's sick leave from DWSD was called "reserve sick" and it was mandated that Morgan would have to certify as disabled in order to use it – otherwise, her PTO would be utilized first.  Further, if you utilize any FMLA time, you are denied use of your sick leave.

## FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF BRUCE BAKER

174.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

175.    Plaintiff Bruce Baker is a fifty-four (54) year old African American male.

176.    Plaintiff Bruce Baker's credentials include Refrigeration I License, a Steam Operator's License, as well as working as a plant mechanic for a total of nineteen (19) years.

177.    Plaintiff Bruce Baker was employed by the City of Detroit in its water department ("DWSD") for approximately fourteen (14) years in a position as a Plant Equipment Operating Mechanic, in which he was routinely given raises, advancement, and fair treatment.

178.    Upon the GLWA formation in 2016, Plaintiff Bruce Baker was informed that if he did not sign on with GLWA, he would not have a job.  Further, Mr. Baker was forced to give up his wages, perks, and Union Affiliation with Local 324 in order to join Defendant Union – Local 2920.

179.    Remarkably, electricians and plumbers were able to stay in their union, while mechanics were forced to join a clerk's union that did not adequately represent their interests and have failed to bargain with GLWA in good faith.

180.    Plaintiff Baker was a valuable asset to Defendant in that he alone had always carried out his work in an exemplary fashion.

181.     Several Plaintiffs, including Mr. Baker, discovered through utilization of the Freedom of Information Act ("FOIA") that there were, and still exist to date, severe pay discrepancies amongst people of color in comparison to others.

182.     By way of specific example, Plaintiff Baker's co-worker, Ray Conner, negotiated a position as a higher-level technician, with higher pay, despite having no credentials such as professional licenses in comparison to Mr. Baker's, in addition to his decades of experience.

183.     Mr. Baker, among many of the other Plaintiffs in this matter, was essentially forced to train the individual working over him while that individual would enjoy professional titles, perks, and better pay than that of Plaintiff Baker.

184.     Further, Mr. Baker was promised advancement and pay raises through his position with GLWA.  However, to date Mr. Baker has only received one (1) $0.50 raise, and management has continually moved the goalpost in terms of the qualifications Mr. Baker will need for advancement.

185.     Additionally, in his employment with GLWA, Mr. Baker was forced to move into Defendant, the Local 2920 Clerk's Union.  However, the Union has repeatedly failed to bargain in terms of pay rates, shift premiums, and benefits, despite their duty to their members that they do so.

186.     Further, Defendant, the Local 2920 Clerk's Union has failed to address numerous grievances raised regarding the racial, age, and gender discrimination ongoing at the GLWA.

**FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF JOHN HALL**

187.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

188.     Plaintiff John Hall is a fifty-seven (57) year old African American male.

189.     Plaintiff John Hall's credentials include a Commercial Driver's License, a III Steam Engineering License, and a III Refrigeration License, as well as working as a plant equipment operation mechanic for a total of thirteen (13) years.

190.     Plaintiff John Hall was employed by the City of Detroit in its water department ("DWSD") for approximately eight (8) years in a position as a Plant Equipment Operation Mechanic.

191.     Upon joining the GLWA formation in 2016, Plaintiff John Hall was informed he would "not lose pay, but not gain pay" despite representation that he would be entitled to advancement and opportunities for raises during his position with GLWA.

192.     In reality, Plaintiff Hall was given pay comparable to what GLWA current compensates a Level (I) technician – a position that only requires a GED or equivalent – despite Plaintiff's aforementioned credentials.

193.     The prevailing wage for a Mechanic such as Mr. Hall is $31.00/hr, however due to Defendant GLWA's reclassification and Mr. Hall's placement in Defendant Local 2920, he is instead paid at a rate of $21.00/hr.

194.     Plaintiff Hall also has not been given any raises or advancement during his five (5) years with GLWA.

195.     Further, Plaintiff Hall and his team of four employees have been carrying out the work of (8) people, and Defendant GLWA has been unable to fill any roles despite due and

proper demand, citing that they cannot hire people with the certifications that Plaintiffs such as Mr. Hall have, at the pay rate that Plaintiffs such as Mr. Hall have been paid.

196.    By way of specific example, Plaintiff Hall's co-worker, Ray Conner, negotiated a position as a higher level technician, with higher pay, despite having no credentials such as professional licenses in comparison to Mr. Hall's, in addition to his decades of experience.

197.    Mr. Hall, among many of the other Plaintiffs in this matter, was essentially forced to train the individual working over him while that individual would enjoy professional titles, perks, and better pay than that of Plaintiff Hall.

198.    Further, Mr. Hall was promised advancement and pay raises through his position with GLWA.  However, no raises were given, and management has continually moved the goalpost in terms of the qualifications Mr. Hall will need for advancement.

199.    When Mr. Hall reached out to his supervisor, Dan Alford, regarding pay discrepancies, he was told that he was labeled as a "red-circle" employee due to coming from DWSD, that he was not entitled to raises, and "if he did not like it he could go somewhere else."

200.    Additionally, in his employment with GLWA, Mr. Hall was forced to move into Defendant, the Local 2920 Clerk's Union.  However, the Union has repeatedly failed to bargain in terms of pay rates and 2.0x pay ("Double-Time Pay") for Sunday hours, despite their duty to their members that they do so.

201.     Further, Defendant, the Local 2920 Clerk's Union has failed to address numerous grievances raised regarding the racial, age, and gender discrimination ongoing at the GLWA.

## FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF RICHARD KING

202.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

203.     Plaintiff Richard King is a Sixty-Five (65) year old African American male.

204.     Plaintiff Richard King was employed with DWSD beginning in 2008 as an Apprentice Electrician.

205.     Upon joining the GLWA formation in 2016, Plaintiff Richard King was hired as an electrical technician, and compensated the same as an entry-level employee, despite bringing eight (8) years of experience with him to Defendant, GLWA.

206.     Plaintiff King also has not been given any raises or advancement during his five (5) years with GLWA, despite routinely receiving them with DWSD for the same position.

207.     Further, Mr. King, among many of the other Plaintiffs in this matter, was essentially forced to train the individual working over him while that individual would enjoy professional titles, perks, and better pay than that of Plaintiff King

208.     Further, Mr. King was promised advancement and pay raises through his position with GLWA.  However, no raises were given, and management has continually moved the goalpost in terms of the qualifications Mr. King will need for advancement.

209.     Mr. King reached out to his numerous supervisors, Dan Alford, Mark Ragsdale, and Majid Khan regarding pay discrepancies, he was told that he was labeled as a "red-circle" employee due to coming from DWSD, that he was not entitled to raises.

210.     Remarkably, two individuals, named Steve Shuk, and Frank Czyz, white in color, also came from DWSD and were working the same job as Plaintiff King – these individuals were both being compensated well-over what Plaintiff King was – a fact that was discovered through FOIA and a chart with pay scales for employees.

211.     Further, an apprentice, Melissa Fryer, was also hired, and was being compensated a higher wage as an apprentice electrician than that of Mr. King, a veteran electrician with over twelve (12) years of experience.

212.     Additionally, Mr. King suffered disparate treatment from white individuals, such as Steve Shuk, Susan Coffey, and Frank Czyz, despite having the same experience and credentials as them.

213.     By way of specific example, Mr. King was placed on Tuesday – Saturday Shifts.

214.     Further, Mr. King attempted to fill one of the three (3) available spots for a master electrician class, however Steve Shuk, and Raymond Zdonkiewicz, who had the same credentials as King, took it upon themselves to ensure that Mr. King would not take the class due to his age and likelihood of retiring shortly thereafter.

215.     Mr. King was also informed upon resignation from GLWA in 2020 due to the disparate treatment – that he would not be allowed to come back as a contract employee – despite the fact that GLWA had hired white individuals, such as Mike Standberry, and

Frank Bock through Lakeshore global to come back as contract employees after leaving GLWA.

### Factual Allegations Specific to Plaintiff Cynthia Stokes

216.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

217.     Plaintiff Cynthia Stokes is a sixty-one (61) year old African American female.

218.     Plaintiff Cynthia Stokes' credentials include a forklift certification, certificate to operate a boom truck, certificate to operate an overhead crane, CPR certification, and first responder certification as well as working as a plant mechanic and planner for a total of twenty-four (24) years.

219.     Plaintiff Cynthia Stokes was employed by the City of Detroit in its water department ("DWSD") for approximately nineteen (19) years before transitioning to GLWA.

220.     In her role with DWSD, Ms. Stokes received periodic raises and DWSD assisted with her taking tests to progress to higher titles and pay rates.  Ms. Stokes advanced to the highest mechanical maintenance title before going into supervision.

221.     Further, Plaintiff Stokes was eventually moved to a role as a Planner with DWSD – and due to exemplary work and performance, was made an acting Supervisor of Planning with DWSD, a role which she held for six (6) years until the formation of Defendant, GLWA.

222.     In her role as Planning Supervisor, Plaintiff Stokes had several direct reports, including a licensed electrician, a licensed plumber, a mechanical engineer, and a licensed millwright.

223.     Plaintiff Stokes was a valuable asset to Defendant in that she alone had always carried out her work in an exemplary fashion.

224.     However, when GLWA took over the plant in which Plaintiff Stokes was carrying out her duties, the dynamic changed.  Essentially, Plaintiff Stokes hired into GLWA on October 31, 2016 as a "Maintenance Technician II" – which was a demotion from her position with DWSD.  Thereafter, without cause, Ms. Stokes was again demoted to a position as a "Maintenance Technician I."  This position required no experience, and only a G.E.D./Equivalent high school diploma.

225.     However, while employed as a "maintenance technician", Plaintiff Stokes was still required to carry out her same duties that she did as a Planner with DWSD.

226.     Several Plaintiffs, including Plaintiff Stokes, discovered through utilization of the Freedom of Information Act ("FOIA") that there were, and still exist to date, severe pay discrepancies amongst people of color in comparison to others.

227.     Further, Defendant GLWA opened a position as a "Team Leader Planner", which was essentially identical to the role that Plaintiff Stokes had with DWSD.

228.     Plaintiff Stokes timely submitted an application for the "Team Leader Planner" role with GLWA due to her experience and exemplary record with both DWSD and GLWA. However, Plaintiff Stokes never received so much as a phone call or response to her application.

229.     Remarkably, Defendant GLWA hired a white man, Buddy Jones, who was not previously employed with GLWA and did not have the same or similar level of qualifications and experience as Plaintiff Cynthia Stokes.

230.     This is not the only occasion this has happened either, GLWA hired a white man by the name of Ned Yeager to a position with the same title as Buddy Jones, without the amount of experience that Plaintiff Stokes brings to GLWA.

231.     Plaintiff Stokes, among many of the other Plaintiffs in this matter, was essentially forced to train the individual working over her while that individual would enjoy professional titles, perks, and better pay than that of Plaintiff Stokes, who continues to do planning for two (2) crews, Central Maintenance and Residuals, and still must resolve planner issues for the white man who was hired for the Team Leader Role – despite lacking the experience and credentials that Plaintiff Stokes has.

232.     Ms. Stokes raised this issue to the appropriate channels in GLWA's Human Resources and was only given the answer that "the management team makes the decisions." Plaintiff Stokes to date, has been continued to be spun back and forth through numerous channels in attempts to raise concerns about these issues.

233.     Further, Plaintiff Stokes was promised advancement and pay raises through her position with GLWA. However, no raises were given, and management has continually moved the goalpost in terms of the qualifications Ms. Stokes will need for advancement.

234.     Specifically, Defendant GLWA claims to have a "Progression Plan" whereby you have to obtain certain skills, which are verified by a Team Leader, and additionally, get an Operator "D" Certification and a CDL-A License before you can advance and get higher

pay – in other words, due to the skills needing to be verified by a Team Leader with less experience than that of Plaintiff Stokes, the goalpost to get advancement is constantly moving.

### FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF GILBERTO GARZA

235.  Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

236.  Plaintiff Gilberto Garza is a fifty-four (54) year old Hispanic male.

237.  Plaintiff Gilberto Garza credentials include being a state licensed journeyman Plumber, holding a CDL Class "A" license, as well as working as a plumber for a total of twenty-three (23) years.

238.  Plaintiff Garza began working with DWSD at the Wastewater Treatment Plant in July of 2000, until December 31, 2015.

239.  On January 1, 2016, Plaintiff Garza entered into an employment agreement with Defendant GLWA due to false and unfulfilled promises that he would receive greater pay and better benefits.

240.  In reality upon accepting the agreement and beginning to work with GLWA, Mr. Garza was informed that he was no longer to be considered a plumber, but rather a level one (1) maintenance technician.  This position was entry level and only required a G.E.D. or equivalent diploma.

241.  Mr. Garza was originally a Level (3) technician in his role with DWSD, and as such, this new position with GLWA was a demotion in terms of pay, benefits, and perks.

242.     Plaintiff Garza was a valuable asset to Defendant in that he alone had always carried out his work in an exemplary fashion.

243.     While employed as a "maintenance technician", Plaintiff Garza was still required to carry out his same duties that he did as a Plumber with DWSD, with the use of his licensure, credentials, and experience.

244.     Several Plaintiffs, including Plaintiff Garza, discovered through utilization of the Freedom of Information Act ("FOIA") that there were, and still exist to date, severe pay discrepancies amongst people of color in comparison to others.

245.     Further, Defendant GLWA's COO, Navid Mehram, held a town hall meeting – when employees raised concerns regarding the pay discrepancy issues, Mr. Mehram stated in no uncertain terms that "he could get rid of [us] and have monkeys push buttons, and pay a fine to [the regulatory entity, EGLE] until he had a replacement crew in place."

246.     Remarkably, Defendant the FOIA pay scales reveal that numerous people with less experience were starting at a higher pay rate than that of Garza – remarkably all of these new employees were white.

247.     When Mr. Garza discussed this issue with the new employees, he was informed that management at GLWA had informed them that "they wanted to get their own maintenance technicians in place at the wastewater plant, and through attrition, replace old lazy DWSD employees."

**FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF ROBERT WILLIAMS**

248.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

249.     Plaintiff Robert Williams is a forty-three (43) year old African American male.

250.     Plaintiff Robert Williams' credentials include a Class "D" Wastewater Certification, as well as working as a technician for a total of eighteen (18) years.

251.     Plaintiff Robert Williams was employed by the City of Detroit in its water department ("DWSD") for approximately thirteen (13) years in a position as a Sewage Plant Technician.  Mr. Williams routinely was given raises and advancement, and by 2016, had become a Senior Plant Technician.

252.     In 2016, GLWA offered Mr. Williams a position within GLWA and instructed him that he must immediately resign from DWSD.

253.     In order to coerce Mr. Williams into accepting the position, Defendant GLWA informed Mr. Williams that there would be "annual raises" for employees with good performance evaluations.  Further, Mr. Williams was informed there would also be "merit raises" for obtaining degrees and licenses.

254.     Mr. Williams has always conducted himself as an exemplary employee, has always had positive evaluations in his five (5) years of employment with GLWA, and has obtained a "Class 'D'" Certification for Wastewater treatment, as GLWA has required for advancement, and as stated throughout this Complaint, has denied other Plaintiffs advancement for allegedly lacking this certification.

255.     Mr. Williams never once received a pay raise under the terms presented to him by GLWA that led to his employment – instead he was given a one-time bonus check of $600.00 and informed that "he was at the maximum pay rate for his title as a Plant Maintenance Technician II."

256.     Moreover, Mr. Williams' title as a Plaint Maintenance Technician II was essentially a demotion from his role with DWSD where he was a Senior Plant Technician.

257.     Plaintiff Williams was a valuable asset to Defendant in that he alone had always carried out his work in an exemplary fashion.

258.     Several Plaintiffs, including Mr. Williams, discovered through utilization of the Freedom of Information Act ("FOIA") that there were, and still exist to date, severe pay discrepancies amongst people of color in comparison to others.

259.     Mr. Williams, among many of the other Plaintiffs in this matter, has essentially forced to train the individuals working over him while that individual would enjoy professional titles, perks, and better pay than that of Plaintiff Williams.  Further, these individuals would be moved into management positions after being hired into GLWA from outside, despite having less experience, after being trained by individuals such as Mr. Williams.

260.     Defendant GLWA's management has continually moved the goalpost in terms of the qualifications Mr. Williams will need for advancement.  By way of specific example, Mr. Williams was informed that in order to advance, he would need to get his Journeyman license and that GLWA, as well as Defendant Local 2920 Clerk's Union, would assist him in getting this license for advancement, as indicated with him when he was hired with GLWA and forced into the 2920 Clerk's Union.  However, despite reaching out to GLWA and the Union, they have provided no assistance.

261.     Moreover, Defendant, the Local 2920 Union has repeatedly failed to bargain in terms of pay rates and 2.0x pay ("Double-Time Pay") for Sunday hours, and Paid Time Off, despite their duty to their members that they do so.

### FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF KIMBERLEY GARZA

262.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

263.     Plaintiff Kimberley Garza is a fifty (50) year old Caucasian female.

264.     Plaintiff Kimberley Garza's credentials include a Wastewater "D" Certification, as well as working in the subject plant at issue in this matter for a total of over twenty-four (24) years.

265.     Plaintiff Kimberley Garza was employed by the City of Detroit in its water department ("DWSD") for approximately twenty (20) years in a position beginning as a Mechanical Helper. Ms. Garza routinely was given raises and advancement, in her role with DWSD. Further, Ms. Garza advanced through DWSD to roles as a Park Maintenance Worker, and Sewage Plant Attendant.

266.     In May 2015, Ms. Garza received her "D" Operator's Certification while working for DWSD.

267.     In 2016, GLWA offered Kimberley Garza a position within GLWA and a representative, Maria Young, instructed Garza that she must immediately resign from DWSD.

268.     GLWA informed Plaintiff Garza that "she would not have a job if she did not apply to GLWA," a statement which was later determined to be untrue.

269.     In order to coerce Ms. Garza into accepting the position, Defendant GLWA informed Ms. Garza that there would be "annual raises" for employees for obtaining degrees and licenses.   Further, Ms. Garza was informed there would also be "merit raises" with good performance evaluations.

270.     Ms. Garza was specifically told that if she obtained her Wastewater "D" Certification, she would be a pay increase.  However, Ms. Garza never received a raise that accurately reflected her earning of this certification, despite representations that she would get such a raise, and despite due and proper demand.

271.     Ms. Garza was given title as a Plant Technician I, however she was never given a raise after obtaining her "D" Certification and becoming a Plant Technician II, that accurately reflects her experience and credentials, based on the pay scales provided by Defendant GLWA.

272.     Notably, Ms. Garza's duties and obligations have increased over the last five (5) years she has spent employed with GLWA, while her compensation has essentially remained the same.

273.     Plaintiff K. Garza was a valuable asset to Defendant in that she alone had always carried out her work in an exemplary fashion.

274.     Notably, Defendant GLWA has been hiring male employees with less experience than Ms. Garza, at a higher pay rate.  Further, GLWA has hired people with less experience to job titles that outrank Ms. Garza, including Technicians II, III, and Management roles.

275.     By way of specific example, two men were hired over Plaintiff Garza, in which she had to train in her role with DWSD, Joseph Weaver, and Harold Elledge.

276.     Remarkably, despite being able to negotiate higher pay, Harold Elledge and Joseph Weaver has less experience, and did not have a "D" Certification.

277.     Weaver and Elledge were told by management, specifically, Majid Khan, not to discuss their pay with employees – however this information was discovered regardless.

278.     Further, Majid Khan told Plaintiff K. Garza that "no one was getting hired in with GLWA making more than the base pay, which was $15.58/hr" a statement which upon information and belief, is untrue.  When Ms. Garza walked Mr. Khan through her progression, both in DWSD and GLWA, he stated that she needed to "apply to get a job at a different company, and GLWA would come back with a counter-offer."  Clearly, GLWA had the ability to give pay raises, but elected not to.

279.     Several Plaintiffs, including Ms. Garza, discovered through utilization of the Freedom of Information Act ("FOIA") that there were, and still exist to date, severe pay discrepancies amongst people of color in comparison to others.

280.     Ms. Garza, among many of the other Plaintiffs in this matter, has essentially forced to train the individuals working over her while that individual would enjoy professional titles, perks, and better pay than that of Plaintiff K. Garza.

281.     Moreover, Plaintiff Garza applied for a position as a team leader due to her credentials that she brings to GLWA.  She was passed on for the role in November, 2019.

282.     When Ms. Garza was passed on for the role, Defendant GLWA's management, particularly Luther Blackburn and Lisa Prysock, informed Ms. Garza that there were no more resumes to be reviewed for the Position.

283.     Thereafter, Ms. Garza resent her resume, to Luther Blackburn, Lisa Prysock, and Anita Green from HR replied claiming that "her resume went to the old computer system" however, their computer system was not switched until later that year, in December, 2019 – making this a false statement.

284.     Remarkably, several men were promoted to this position, rather than Plaintiff Garza.

285.     When Plaintiff K. Garza raised concerns for this, as well as concerns pertaining to training during the COVID-19 pandemic, Plant Operational Manager, Luther Blackburn, retaliated against her by moving her from 8 hour shifts to 12 hour shifts, despite issues with Plaintiff Garza doing so.

286.     Further, Ms. Garza and her supervisor, Melvin Murphy had a meeting with COO Navid Mehram regarding Ms. Garza's pay discrepancy, to which he informed them that "the union was in negotiations, and there nothing he could do about it."  However clearly, GLWA and Local 2920 did not meet and collectively bargain in good faith.

287.     Additionally, in her employment with GLWA, Ms. Garza was forced to move into Defendant, the Local 2920 Clerk's Union.  However, the Union has repeatedly failed to bargain in terms of pay rates and 2.0x pay ("Double-Time Pay") for Sunday hours, despite their duty to their members that they do so.

288.     Further, Defendant, the Local 2920 Clerk's Union has failed to address numerous grievances raised regarding the racial, age, and gender discrimination ongoing at the GLWA.  Particularly, Plaintiff K. Garza filed a grievance with the union and followed up

several times, the Local 2920 Clerk's union never investigated her issues raised regarding discrimination at GLWA.

**FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF MARCUS WISEMAN**

289.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

290.    Plaintiff Marcus Wiseman is a forty-nine (49) year old African American male.

291.    Plaintiff Marcus Wiseman's credentials include being a journeyman Plumber, having a Class-A CDL License, as well as working as a Plumber for a total of twenty-three (23) years.

292.    Plaintiff Marcus Wiseman was employed by the City of Detroit in its water department ("DWSD") for approximately eighteen (18) years in a position as a Plumber. Mr. Wiseman routinely was given raises and advancement, in his role with DWSD.

293.    In 2016, GLWA offered Mr. Wiseman a position within GLWA and instructed him that he must immediately resign from DWSD.

294.    In order to coerce Mr. Wiseman into accepting the position, Defendant GLWA informed Mr. Wiseman that there would be "annual raises" for employees with good performance evaluations.  Further, Mr. Wiseman was informed there would also be "merit raises" for obtaining degrees and licenses.

295.    Mr. Wiseman was given title as a Plaint Maintenance Technician III.  Thereafter, GLWA unilaterally and without cause, reclassified Mr. Wiseman as a Plant Maintenance Technician I, a position that only required a high school diploma and/or GED with no actual experience, and was essentially a demotion from his role with DWSD.

296.     Notably, Mr. Wiseman's duties and obligations have increased over the last five (5) years he has spent employed with GLWA, while his compensation has remained the same.

297.     Currently, Mr. Wiseman has duties and obligations substantially similar to that of what GLWA considers a "Plant Maintenance Technician III," while still only being compensated the same as a "Plant Maintenance Technician I."

298.     Plaintiff Wiseman was a valuable asset to Defendant in that he alone had always carried out his work in an exemplary fashion.

299.     When Mr. Wiseman reached out to management regarding the severe pay discrepancies, he was informed that he was a "red-circle employee due to coming from DWSD" and that therefore, his pay was capped and already at its limit.

300.     Several Plaintiffs, including Mr. Wiseman, discovered through utilization of the Freedom of Information Act ("FOIA") that there were, and still exist to date, severe pay discrepancies amongst people of color in comparison to others.

301.     Notably, Defendant GLWA has been hiring white employees with less experience than Mr. Wiseman, at a higher pay rate.  Further, GLWA has hired people with less experience to job titles that outrank Mr. Wiseman, including Technicians II, III, and Management roles.

302.     Defendant GLWA's management has continually moved the goalpost in terms of the qualifications Mr. Wiseman will need for advancement.  By way of specific example, Mr. Wiseman was told he needed to get his CDL-A License for advancement, despite it not being a condition of employment for an identical position he held with DWSD.

303.     Further, Mr. Wiseman does not use the CDL-A with GLWA.

304.     Thereafter, when a raise was requested, Mr. Wiseman was told he also needed to get his Wastewater "D" Certification, despite that not being needed for his prior employment with DWSD, nor his current employment with GLWA.

## FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF JAY LEWIS

305.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

306.     Plaintiff Jay Lewis is a fifty-seven (57) year old African American male.

307.     Plaintiff Jay Lewis has been employed with the City of Detroit for twenty (20) years, beginning in 2001 when he started his position as a Plant Maintenance Mechanic.

308.     Mr. Lewis routinely was given raises and advancement, in his role with DWSD.

309.     In 2016, GLWA offered Mr. Lewis a position within GLWA and instructed him that he must immediately resign from DWSD.

310.     In order to coerce Mr. Lewis into accepting the position, Defendant GLWA informed Mr. Lewis that there would be "annual raises" for employees with good performance evaluations.

311.     Mr. Lewis was given title as a Plaint Maintenance Technician I, a position that only required a high school diploma and/or GED with no actual experience, and was essentially a demotion from his role with DWSD, despite bringing fifteen (15) years of experience with him to GLWA at the time of his hire.

312.     Notably, Mr. Lewis' duties and obligations have increased over the last five (5) years he has spent employed with GLWA, while his compensation has remained the same.

313.     Plaintiff Lewis is a valuable asset to Defendant in that he alone had always carried out his work in an exemplary fashion.

314.     When Mr. Lewis reached out to management regarding the severe pay discrepancies.  Specifically, COO Navid Mehram met with Mr. Lewis and admitted that there were issues with the hiring practices of Defendant GLWA.  Mr. Mehram claimed that this is "no longer an issue" however, clearly an issue persists to this date.

315.     Several Plaintiffs, including Mr. Lewis, discovered through utilization of the Freedom of Information Act ("FOIA") that there were, and still exist to date, severe pay discrepancies amongst people of color in comparison to others.

316.     Notably, Defendant GLWA has been hiring white employees from outside of GLWA with less experience than Mr. Lewis, at a higher pay rate.  Plaintiffs such as Mr. Lewis have been informed that this is because GLWA could not hire anyone to fulfill the roles worked by people such as Mr. Lewis, due to the pay being too low.

317.     Remarkably, GLWA continues to pay Mr. Lewis and this entire class of Plaintiffs an astonishingly low wage for the service they provide to GLWA.

318.      Further, GLWA has hired people with less experience to job titles that outrank Mr. Lewis, including Technicians II, III, and Management roles.

319.     Mr. Lewis, among many of the other Plaintiffs in this matter, was essentially forced to train the individual working over him while that individual would enjoy professional titles, perks, and better pay than that of Plaintiff May.

320.     Additionally, in his employment with GLWA, Mr. Lewis was forced to move into Defendant, the Local 2920 Clerk's Union.  However, the Union has repeatedly failed to

bargain in terms of pay rates and 2.0x pay ("Double-Time Pay") for Sunday hours, despite their duty to their members that they do so.

321.     Further, Defendant, the Local 2920 Clerk's Union has failed to address numerous grievances raised regarding the racial, age, and gender discrimination ongoing at the GLWA.

**FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF TIMOTHY ALLEN**

322.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

323.     Plaintiff Timothy Allen is a fifty-three (53) year old African American male.

324.     Plaintiff Timothy Allen's credentials include over twenty-four (24) years of experience working in the plant at subject in this Complaint, either in his capacity as an employee of DWSD, or as it is known today, in his capacity as an employee of GLWA.

325.     Plaintiff Timothy Allen began working as a Mechanical Helper with DWSD in 1997.  Through his hard work, Mr. Allen climbed the ranks through DWSD and became a Plant Maintenance Foreman, which was a supervisory position.  At times, Mr. Allen would supervise up to twelve (12) employees at one time.

326.     In 2016, GLWA offered Mr. Allen a position within GLWA and instructed him that he must immediately resign from DWSD.  Further, GLWA falsely informed Plaintiff Allen that he would need to accept the job with them or he would not have a job at all.

327.     In order to coerce Mr. Allen into accepting the position, Defendant GLWA informed Mr. Allen that there would be "annual raises" for employees with good

performance evaluations.  Further, Mr. Allen was informed there would also be "merit raises" for obtaining degrees and licenses.

328.    Mr. Allen was given title as a Plaint Maintenance Technician I, a position that only required a high school diploma and/or GED with no actual experience, and was essentially a demotion from his role with DWSD.  Further, upon signing with GLWA, Mr. Allen received a $0.50/hr pay reduction.

329.    Notably, Mr. Allen's duties and obligations have increased over the last five (5) years he has spent employed with GLWA, while his compensation has remained the same.

330.    Plaintiff Allen is a valuable asset to Defendant in that he alone had always carried out his work in an exemplary fashion.

331.    Several Plaintiffs, including Mr. Allen, discovered through utilization of the Freedom of Information Act ("FOIA") that there were, and still exist to date, severe pay discrepancies amongst people of color in comparison to others.

332.    Notably, Defendant GLWA has been hiring white employees with less experience than Mr. Allen, at a higher pay rate.  Further, GLWA has hired people with less experience to job titles that outrank Mr. Allen, including Technicians II, III, Team Leader, and Management roles.

333.    By way of specific example, Defendant GLWA hired two people off of the street at the level of Maintenance Technician II, despite the fact that they don't have any experience – these people are outranking Mr. Allen in terms of pay, perks, and benefits. These individuals were named Melissa and Mark, and their last names are not currently known as of the filing of this Complaint.

334.     Further, Defendant GLWA has hired people into "Team Leader" and "Management Professional" roles, without any plant operation experience whatsoever.

335.     During Plaintiff Allen's last several years he has spent employed with GLWA – he has not received a single raise.

336.     Mr. Allen has reached out to GLWA's Human Resources (known as "OD") to discuss this issue and has been told that he is a "red-circle" employee, and that because of his former position with DWSD, he is maxed out on his pay rate and cannot receive a raise.

337.     When Mr. Allen inquires about the pay rate range for his position – GLWA ignores his requests and does not give him direct answers, despite due and proper demand.

338.     Further, Mr. Allen has attempted to advance to higher positions several times.  By way of specific example, Mr. Allen applied for the position of Team Leader with GLWA, a position identical to the one which he held at DWSD.

339.     Every time Mr. Allen applies – he receives a notice that "after a review of your qualifications, we find that we are unable to pursue your application for this position any further at this time."

340.     Remarkably, a man who used to work under Mr. Allen's supervision, Eddie Hudson, is now a team leader doing the job that Mr. Allen applied for.

341.     Defendant GLWA's management has changed all of the dynamics in terms of job title and advancement requirements, and continually moved the goalpost in terms of the qualifications Mr. Allen will need for advancement.  By way of specific example, Mr. Allen was told he needed to get his Class "D" Operator's License for advancement, despite it not being a condition of employment for an identical position he held with DWSD.

Moreover, even in his role with GLWA – Mr. Allen does not operate the equipment, he merely repairs and maintains it.

342.     Mr. Allen, among many of the other Plaintiffs in this matter, was essentially forced to train the individual working over him while that individual would enjoy professional titles, perks, and better pay than that of Plaintiff Allen.

343.     By way of example, the level II Maintenance Technician, Melissa, was chosen by former employee Mark Ragsdale – who upon information and belief, has been terminated from GLWA for mistreating employees and being overtly racially discriminatory.  Mr. Ragsdale arranged for Melissa to get a Maintenance Technician II position at GLWA, where she is in an office role doing "asset maintenance" despite having no prior experience in maintaining the plant's equipment as Mr. Allen does – notably, for a higher level of pay.

344.     Moreover, GLWA has hired "management professionals" to work at the plant, who have no experience running a plant, so long as they have a bachelor's degree.  By way of example, they hired Jonathan, whose last name is not currently known, a white man with a bachelor's degree in geology, who operates in a Plant Management role.

345.     Moreover, Mr. Allen has attempted to get lab experience in efforts to get licenses and certification and advancement – training that GLWA stated it would provide in efforts to give advancement to employees when they came from DWSD.  Every time Mr. Allen seeks to have training done, his request is denied or ignored.  However, employees such as Melissa have been sent on all expenses paid trips to training seminars outside of the city of Detroit.

**FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF TANYA GLOVER**

346.      Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

347.      Plaintiff Tanya Glover is a fifty-eight (58) year old African American female.

348.      Plaintiff Tanya Glover's credentials include over fifteen (15) years of experience as a Water Systems Control Technician.

349.      Plaintiff Tanya Glover was employed by the City of Detroit in its water department ("DWSD") for approximately thirteen (13) years, beginning as an Instrument Technician Apprentice, and routinely receiving raises and advancement throughout her time there.

350.      Plaintiff Glover joined GLWA in 2016 under the expectation that things would be ran similarly to how they were at DWSD, in terms of fair treatment, fair compensation, and advancement opportunities.

351.      Plaintiff Glover was a valuable asset to Defendant in that she alone had always carried out her work in an exemplary fashion, during her employment with GLWA as an "Electrical Control Technician I."

352.      However, Ms. Glover was informed that she would receive pay raised based on her annual performance reviews provided she "exceeded" expectations on the performance reviews.

353.      However, when her performance reviews were issued, Ms. Glover was informed that she could only "meet" expectations due to her expectations being set at 100% in all conceivable metrics.  It was not possible for Ms. Glover to "exceed" her performance review expectations, being that she could not attain a number greater than 100% in the metrics provided to her.

354.     Further, when Ms. Glover went to Human Resources for Defendant ("OD") to discuss this issue – she was informed that she would need to begin being evaluated for tasks that were completely unrelated to her central job function as an Electrical Instrument Control Technician.

355.     Moreover, Ms. Glover also discovered that the goal-post was constantly shifting and unattainable for former DWSD employees.  By way of specific example, Ms. Glover was informed that she would need to obtain a Class "A" CDL in order to advance from a I Technician to a II Technician – despite the fact that a Commercial Driver's License had nothing to do with Ms. Glover's job function with GLWA.

356.     Further, it was discovered that a Class "A" CDL was not a requirement for the Electrical Instrument Control Technician II or III job titles on external job postings made by GLWA.  Further, operating commercial equipment was not a duty or responsibility under these job titles either.

357.     Ms. Glover discovered that GLWA had hired a man from Ann Arbor into the position as an Electrical Instrument Control Technician III at a much higher pay rate, despite him having significantly less experience than that of Ms. Glover.

358.     Ms. Glover, among many of the other Plaintiffs in this matter, was essentially forced to train the individual working over her while that individual would enjoy professional titles, perks, and better pay than that of Plaintiff Glover.

359.     Ms. Glover raised this issue to the appropriate channels in GLWA's Human Resources and was only given the answer that "they pay new hires what the market

dictates." Ms. Glover has also been informed that "if you want a raise, bring us a competing job offer."

360.    Further, Ms. Glover has sought out training opportunities, which were unreasonably and without cause, denied to her.

361.    By way of specific example, when Ms. Glover attempted to take a training class for advancement, her supervisor, Richard Muntz, singled her out from everyone else taking the training and informed her that she had to go watch a contractor work instead, or she would not be able to take the training.

362.    Remarkably, the contractor came during the training class period, leaving Ms. Glover with no option – either way she was unable to take the class she needed for advancement.

363.    Further, Richard Muntz and Mark Ragsdale (who was terminated from GLWA, upon information and belief, for discrimination to employees of color at GLWA), accused Ms. Glover amongst other members of her team, of "looting" the warehouse where their equipment was kept – a racially charged term being that there was no evidence that anything had gone missing from the warehouse.

## FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF JOE KIMBROUGH

364.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

365.    Plaintiff Joe Kimbrough is a forty-six (46) year old African American Male.

366.    Plaintiff Joe Kimbrough's credentials include over nineteen (19) years of experience as a maintenance technician.

367.     Plaintiff Joe Kimbrough began working for DWSD on January 22, 2002, as a Sewage Plant Attendant.  Plaintiff Kimbrough routinely received raises, and went from a starting wage of $10.60 per hour, to a wage of $17.90 per hour when he transferred from DWSD to GLWA upon its formation.

368.     GLWA offered Mr. Kimbrough a position, under the false pretense that he would receive fair compensation, raises, and opportunities for advancement.

369.     At the time of his hiring by Defendant GLWA, Plaintiff Kimbrough accepted a position as Plant Maintenance Tech II.

370.     However, approximately a year later, GLWA "re-classified" Mr. Kimbrough, or in other words, demoted him to Plant Maintenance Tech I, which required only a high school diploma or GED, despite Mr. Kimbrough having the aforementioned qualifications.

371.     Plaintiff Kimbrough was a valuable asset to Defendant in that he alone had always carried out his work in an exemplary fashion.

372.     Several Plaintiffs, including Mr. Kimbrough, discovered through utilization of the Freedom of Information Act ("FOIA") that there were, and still exist to date, severe pay discrepancies amongst people of color in comparison to others.

373.     By way of example, Mr. Kimbrough was classified as a Plant Maintenance Tech II, but was never compensated as much as those who came in as outside hires as Plant Maintenance Tech II's.

374.     When Mr. Kimbrough was demoted to a Plant Maintenance Tech I, he was still required to perform the duties and responsibilities of a Plant Maintenance Tech II, despite not being compensated as such.

375.     Further, by way of specific example, Defendant GLWA hired a white man by the name of Dave, whose last name is not currently known, to a position as a team leader, outranking Mr. Kimbrough.  "Dave" came into GLWA with four (4) years of experience, and higher pay than that of Mr. Kimbrough, while Mr. Kimbrough has nineteen (19) years of exemplary work performance and experience.

376.     Mr. Kimbrough, among many of the other Plaintiffs in this matter, was essentially forced to train the individual working over him while that individual would enjoy professional titles, perks, and better pay than that of Plaintiff Kimbrough.

377.     Mr. Kimbrough raised this issue to the appropriate channels in GLWA's Human Resources and was only given the answer that "they pay what the market dictates," and that "their pay scale for current employees is based off of Gennesse County Water Dept. Employees."

378.     Further, Mr. Kimbrough was promised advancement and pay raises through his position with GLWA.  However, no raises were given, and management has continually moved the goalpost in terms of the qualifications Mr. Kimbrough will need for advancement.

379.     By way of specific example, Mr. Kimbrough was informed that in order to advance, he would need to be evaluated and "exceed expectations" in metrics that he did not work in, within his maintenance role with GLWA.  Specifically, those roles include things like purchasing and accounting.

380.     Additionally, in his employment with GLWA, Mr. Kimbrough was forced to move into Defendant, the Local 2920 Clerk's Union.  However, the Union has repeatedly failed

to bargain in terms of things including, but not limited to, pay rates, benefits, and shift premiums, despite their duty to their members that they do so.

381.     Further, Defendant, the Local 2920 Clerk's Union has failed to address numerous grievances raised regarding the racial, age, and gender discrimination ongoing at the GLWA.

## FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF JAMES DYSON

382.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

383.     Plaintiff James Dyson is a forty-nine (49) year old African American Male.

384.     Plaintiff James Dyson's credentials include over twenty-four (24) years of experience working at the subject wastewater treatment plant at issue in this matter.  Mr. Dyson participated in a Millwright apprenticeship through DWSD, where he received his United States Department of Labor Certification, and additionally, Mr. Dyson holds an Associate's degree from Henry Ford Community College in Building Trades.

385.     Plaintiff James Dyson began working for DWSD on February 16, 1997, as a Mechanical Apprentice.   Plaintiff Dyson routinely received raises and advancement opportunities during his employment with DWSD.

386.     GLWA offered Mr. Dyson a position, under the false pretense that he would receive fair compensation, raises, and opportunities for advancement.

387.     At the time of his hiring by Defendant GLWA, Plaintiff Dyson accepted a position as Plant Maintenance Tech III.

388.     However, approximately a year later, GLWA "re-classified" Mr. Dyson, or in other words, demoted him to Plant Maintenance Tech I, which required only a high school diploma or GED, despite Mr. Dyson having the aforementioned qualifications.

389.     Plaintiff Dyson was a valuable asset to Defendant in that he alone had always carried out his work in an exemplary fashion.

390.     Several Plaintiffs, including Mr. Dyson, discovered through utilization of the Freedom of Information Act ("FOIA") that there were, and still exist to date, severe pay discrepancies amongst people of color in comparison to others.

391.     By way of example, Mr. Dyson was classified as a Plant Maintenance Tech III, but was never compensated as much as those who came in as outside hires as Plant Maintenance Tech III's.

392.     When Mr. Dyson was demoted to a Plant Maintenance Tech I, he was still required to perform the duties and responsibilities of a Plant Maintenance Tech III, despite not being compensated as such.

393.     Further, by way of specific example, Defendant GLWA hired a white man by the name of Buddy Jones, to a position as a team leader, outranking Mr. Dyson.  Remarkably, Buddy Jones was less qualified, and less experienced, and only applied for a technician position that Mr. Dyson had been previously denied for due to "not meeting qualifications."

394.     Mr. Dyson raised this issue to the appropriate channels in GLWA's Human Resources to a Ms. Doherty, and was only given the answer that "if he wanted an increase in pay, he had to give them a competing job offer which they would match."

395.    Mr. Dyson followed this advice and received a competing job offer from St. Mary's

Cement – Mr. Dyson presented the job offer to management, who told him they would

match his pay if he forfeited the job offer – which he did.  Mr. Dyson never received a pay

match despite forfeiting a higher paying job offer.

## FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF PATTI TURNER

396.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full

herein.

397.    Plaintiff Patti Turner is a fifty-seven (57) year old African American Female.

398.    Plaintiff Patti Turner's credentials include over twenty-five (25) years of

experience working at the subject wastewater treatment plant at issue in this matter.

Further, Ms. Turner's credentials include a Bachelor's Degree in Business Administration,

as well as a Master's Degree in Public Administration.

399.    GLWA offered Ms. Turner a position as an Office Support Specialist III, however

it was under the false pretense that she would receive fair compensation, raises, and

opportunities for advancement.  Notably, this position did not require any of the degrees

or credentials that Ms. Turner brought to GLWA with her.

400.    Plaintiff Turner was a valuable asset to Defendant in that she alone had always

carried out her work in an exemplary fashion and has always exceeded expectations on all

of her performance reviews.

401.    Notably, when offering Ms. Turner a position, GLWA's Organization

Development Group ("OD") promised her that she would receive annual raises based on

her performance evaluations.  Despite exceeding expectations on those evaluations, Ms. Turner has never received pay advancement.

402.    GLWA also led Ms. Turner to believe that if she achieved higher education in terms of Degree's she would be able to gain advancement, thus leading Ms. Turner to obtain her aforementioned Master's Degree.

403.    Despite gaining the necessary credentials for advancement, Ms. Turner has not been considered for any advancement.  She has applied for numerous positions, including a "Professional Administrative Analyst" – and never hears back on the positions.

404.    At one point, Ms. Turner was told by OD she would receive an interview for the "Professional Administrative Analyst" role, however she never got the interview, and upon information and belief, GLWA hired a male from outside the company to fill this position.

405.    Additionally, Ms. Turner has observed that whites and males from outside of the company are being hired into all of the roles Ms. Turner has been applying for, all of which had a higher pay scale and were essentially an advancement for Ms. Turner.

406.    Moreover, Ms. Turner has also discovered that the position she currently is in, at one point was being offered to outside individuals and being filled at a higher pay rate than that which she currently receives. Defendant GLWA has since stopped putting the pay rates in their external job postings.

407.    Ms. Turner raised this issue to the appropriate channels in GLWA's Human Resources and was only given the answer that "she should put in an application to a higher position and hope for the best."

408.     Additionally, in her employment with GLWA, Ms. Turner was forced to move into Defendant, the Local 2920 Clerk's Union.  However, the Union has repeatedly failed to bargain in terms of pay rates and 2.0x pay ("Double-Time Pay") for Sunday hours, despite their duty to their members that they do so.

409.     Further, Defendant, the Local 2920 Clerk's Union has failed to address numerous grievances raised regarding the racial, age, and gender discrimination ongoing at the GLWA.

### FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF TONYA TUCKER

410.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

411.     Plaintiff Tonya Tucker is a fifty-five (55) year old African American Female.

412.     Plaintiff Tonya Tucker credentials include over twelve (12) years of experience working at the subject wastewater treatment plant at issue in this matter.

413.     GLWA offered Ms. Tucker a position as a Support Specialist I, however it was under the false pretense that she would receive fair compensation, raises, and opportunities for advancement.  Notably, this position did not require any of credentials that Ms. Tucker brought to GLWA with her, rather this position only required a GED/High School Diploma and no experience.

414.     Plaintiff Tucker was a valuable asset to Defendant in that she alone had always carried out her work in an exemplary fashion.

415.    Notably, when Ms. Tucker was offered a position, she was not considered for the "Support Specialist II" role, despite having seven (7) years of experience at the time that she was hired into GLWA.  This position only required experience, which Ms. Tucker had.

416.    Additionally, Ms. Tucker has personally observed that Defendant GLWA would hire white individuals from outside of the company, with less experience than her, to fulfill these roles as Support Specialist II, or III.  By way of specific example, Defendant GLWA hired a Donna Harris-Morse to a role as a Support Specialist II with less experience.

417.    Ms. Tucker, among many of the other Plaintiffs in this matter, was essentially forced to train the individual working over her while that individual would enjoy professional titles, perks, and better pay than that of Plaintiff Tucker.

418.    At one point, Ms. Tucker raised these issues to the director of GLWA, who told her that the issue would be investigated.  Thereafter, she was informed that the decision to make her a "Support Specialist I" was by an individual in OD named Wendy who evaluated Ms. Tucker's credentials.  H

419.    Additionally, Ms. Tucker has observed that white people are being hired into all of the roles Ms. Tucker has been applying for, all of which had a higher pay scale and were essentially an advancement for Ms. Tucker.

420.    Additionally, in his employment with GLWA, Ms. Tucker was forced to move into Defendant, the Local 2920 Clerk's Union.  However, the Union has repeatedly failed to bargain in terms of pay rates and 2.0x pay ("Double-Time Pay") for Sunday hours, despite their duty to their members that they do so.

421.     Further, Defendant, the Local 2920 Clerk's Union has failed to address numerous grievances raised regarding the racial, age, and gender discrimination ongoing at the GLWA.

422.     Defendant Local 2920 Clerk's Union has also failed to address a grievance raised by Ms. Tucker concerning her improper suspension due to "falsifying time sheets." Ms. Tucker would also do her clocking in and our on her mobile phone – an acceptable practice at GLWA that was not forbidden.

423.     Specifically, Ms. Tucker provided all of the necessary documentation to Local 2920, who failed to investigate and provide the documentation to GLWA within the required timeframe for arbitration – as such, Ms. Tucker was wrongfully terminated from GLWA.

**FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF TENEIA CLEMENT**

424.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

425.     Plaintiff Teneia Clement is a sixty-three (63) year old African American Female.

426.     Plaintiff Teneia Clement's credentials include over twenty-two (22) years of experience working at the subject wastewater treatment plant at issue in this matter. Further, Ms. Clement has all necessary licenses required for her advancement, including a Stationary Engineer License and a TSE Universal Certification.

427.     GLWA offered Ms. Clement a position as a Plant Technician, however it was under the false pretense that she would receive fair compensation, raises, and opportunities for advancement.  Notably, this position did not require any of credentials that Ms. Clement

brought to GLWA with her, rather this position only required a GED/High School Diploma and no experience.

428.     Additionally, GLWA falsely informed Ms. Clement that she had to work for GLWA if she wanted to keep her job.  Ms. Clement relied on this statement and as a result, she lost her pension, both with DWSD and her former Union, Local 324.

429.     Plaintiff Clement was a valuable asset to Defendant in that she alone had always carried out her work in an exemplary fashion.

430.     Additionally, Ms. Clement has personally observed that Defendant GLWA would hire white individuals from outside of the company, with less experience than her, to fulfill these roles as Engineer II, or III, despite not having all the necessary certifications or licensure.  By way of specific example, Defendant GLWA hired a white individual to the same position as Ms. Clement, who discovered that this person was making approximately $3.00/4.00 more than Ms. Clement.

431.     Ms. Clement, among many of the other Plaintiffs in this matter, was essentially forced to train the individual working over her while that individual would enjoy professional titles, perks, and better pay than that of Plaintiff Tucker.

432.     Additionally, Ms. Clement has observed that white people are being hired into all of the roles Ms. Clement has been applying for, all of which had a higher pay scale and were essentially an advancement for Ms. Clement.

433.     Additionally, in his employment with GLWA, Ms. Clement was forced to move into Defendant, the Local 2920 Clerk's Union.  However, the Union has repeatedly failed

to bargain in terms of pay rates and 2.0x pay ("Double-Time Pay" or "Shift Premiums")

for Sunday hours, despite their duty to their members that they do so.

434.    Further, Defendant, the Local 2920 Clerk's Union has failed to address numerous

grievances raised regarding the racial, age, and gender discrimination ongoing at the

GLWA.

### FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF ALFRED TEASELY

435.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full

herein.

436.    Plaintiff Alfred Teasley is a fifty-five (55) year old African American male.

437.    Plaintiff Alfred Teasley's credentials include a Commercial Driver's License, a

Operating/Rigging Certification, and a Confined Space Certification, as well as working

as a plant mechanic for a total of twenty-four (24) years.

438.    Plaintiff Alfred Teasley was employed by the City of Detroit in its water department

("DWSD") for approximately eighteen (18) years, beginning as a Mechanical Helper, and

climbing the ranks through pay raises and advancement to become a supervisor.

439.    In 2016, GLWA offered Mr. Teasley a position within GLWA and instructed him

that he must immediately resign from DWSD, and if not, he would lose his job.

440.    Mr. Teasley accepted a position with GLWA, however, despite years of supervisory

experience at DWSD, he was reclassified as a Maintenance Technician I – a position that

only required a high school diploma/GED and no experience.

441.    Plaintiff Teasely was a valuable asset to Defendant in that he alone had always

carried out his work in an exemplary fashion and further, has always had exemplary

performance reviews, a condition that GLWA told Mr. Teasley was necessary for pay raises.

442.     Several Plaintiffs, including Mr. Teasley, discovered through utilization of the Freedom of Information Act ("FOIA") that there were, and still exist to date, severe pay discrepancies amongst people of color in comparison to others.

443.     By way of specific example, Plaintiff Teasley's co-worker, Mark Christie, a white man, negotiated a position as a Level II Technician, in comparison to Mr. Teasley's Level I Technician position.

444.     Notably, GLWA has made a point that being that these are union employees who are Plaintiffs in this matter, who were forced to join Defendant Local 2920 upon its formation, it is shocking that GLWA allowed white individuals to come in as outside hires and negotiate pay raises with their positions.

445.     Mr. Christie was compensated $50,000.00 starting salary, despite having no credentials in comparison to Mr. Teasley's decades of experience.

446.     This issue was no coincidence, Defendant GLWA also hired a white individual named Justin Seal, despite having no verification to his credentials, at a rate of $23.00 per hour or $47,840.00 per year.

447.     Mr. Teasley, among many of the other Plaintiffs in this matter, was essentially forced to train the individual working over him while that individual would enjoy professional titles, perks, and better pay than that of Plaintiff Teasley.

448.     Further, Mr. Teasley was promised advancement and pay raises through his position with GLWA.  However, no raises were given, and management has continually moved the goalpost in terms of the qualifications Mr. May will need for advancement.

449.     Additionally, in his employment with GLWA, Mr. Teasley was forced to move into Defendant, the Local 2920 Clerk's Union.  However, the Union has repeatedly failed to bargain in terms of pay rates and 2.0x pay ("Double-Time Pay") for Sunday hours, despite their duty to their members that they do so.

450.     Further, Defendant, the Local 2920 Clerk's Union has failed to address numerous grievances raised regarding the racial, age, and gender discrimination ongoing at the GLWA.

### FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF ROGER GREENWOOD

451.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

452.     Plaintiff Roger Greenwood is a sixty-six (66) year old African-American male.

453.     Plaintiff Roger Greenwood's credentials include a Certificate for Plant Operation, a Heating & Cooling Certificate, an Associate's Degree in Energy Technology, as well as working as a Plant Equipment Operating Mechanic for a total of thirty (30) years.

454.     Plaintiff Greenwood was employed by the City of Detroit in its water department ("DWSD") for approximately twenty-six (26) years in a position as a Plant Equipment Operating Mechanic, in which he was routinely given raises, advancement, and fair treatment.

455.    Upon the GLWA formation in 2016, Plaintiff Roger Greenwood was informed that if he did not sign on with GLWA, he would not have a job.  Further, Mr. Greenwood was forced to give up his wages, perks, and Union Affiliation with Local 324 in order to join Defendant Union – Local 2920.

456.    Additionally, Mr. Greenwood was also informed that he would maintain all of his retirement benefits from DWSD in his transfer to GLWA, however such was not the case, and Mr. Greenwood lost a significant portion of his retirement benefits.

457.    Remarkably, electricians and plumbers were able to stay in their union, while mechanics were forced to join a clerk's union that did not adequately represent their interests and have failed to bargain with GLWA in good faith.

458.    Plaintiff Greenwood was a valuable asset to Defendant in that he alone had always carried out his work in an exemplary fashion.

459.    Several Plaintiffs, including Mr. Greenwood, discovered through utilization of the Freedom of Information Act ("FOIA") that there were, and still exist to date, severe pay discrepancies amongst people of color in comparison to others.

460.    By way of specific example, Plaintiff Greenwood's co-worker, Ray Conner, negotiated a position as a higher-level technician, with higher pay, despite having no credentials such as professional licenses in comparison to Mr. Greenwood's, in addition to his decades of experience.

461.    Mr. Greenwood, among many of the other Plaintiffs in this matter, was essentially forced to train the individual working over him while that individual would enjoy professional titles, perks, and better pay than that of Plaintiff Greenwood

462.     Further, Mr. Greenwood was promised advancement and pay raises through his position with GLWA.  However, to date Mr. Greenwood has only received one (1) $1.00 raise, and management has continually moved the goalpost in terms of the qualifications Mr. Greenwood will need for advancement.

463.     Additionally, in his employment with GLWA, Mr. Greenwood was forced to move into Defendant, the Local 2920 Clerk's Union.  However, the Union has repeatedly failed to bargain in terms of pay rates, shift premiums, and benefits, despite their duty to their members that they do so.

464.     Further, Defendant, the Local 2920 Clerk's Union has failed to address numerous grievances raised regarding the racial, age, and gender discrimination ongoing at the GLWA.

**FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF LEMONT BOYD**

465.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

466.     Plaintiff Lemont Boyd is a fifty-two (52) year old African American male.

467.     Plaintiff Lemont Boyd's credentials include over twenty-nine (29) years of experience working in the plant at subject in this Complaint, either in his capacity as an employee of DWSD, or as it is known today, in his capacity as an employee of GLWA.

468.     Plaintiff Boyd began working as a Mechanical Helper with DWSD 29 years ago. Through his hard work, Mr. Boyd climbed the ranks through DWSD and became a Senior Foreman, which was a supervisory position.

469.     In 2016, GLWA offered Mr. Boyd a position within GLWA and instructed him that he must immediately resign from DWSD.  Further, GLWA falsely informed Plaintiff Boyd that he would need to accept the job with them or he would not have a job at all.

470.     In order to coerce Mr. Boyd into accepting the position, Defendant GLWA informed Mr. Boyd that there would be "annual raises" for employees with good performance evaluations.  Further, Mr. Boyd was informed there would also be "merit raises" for obtaining degrees and licenses.

471.     Further, GLWA informed Mr. Boyd that he would start with GLWA as a Plant Maintenance Technician III "Team Leader" – a supervisory position – based on his experience.

472.     Mr. Boyd was instead given title as a Plaint Maintenance Technician I, a position that only required a high school diploma and/or GED with no actual experience and was essentially a demotion from his role with DWSD.  Further, upon signing with GLWA, Mr. Boyd received a $0.98/hr pay reduction.

473.     Notably, Mr. Boyd's duties and obligations have increased over the last five (5) years he has spent employed with GLWA, while his compensation has remained the same.

474.     Plaintiff Boyd is a valuable asset to Defendant in that he alone had always carried out his work in an exemplary fashion, and never has received any discipline on the job.

475.     Mr. Boyd has discovered that Defendant GLWA has been hiring white employees with less experience than Mr. Boyd, to positions that outrank him and allow them for advancement beyond what Mr. Boyd can receive while forced to remain as a Plant

Technician I.  Further, GLWA has hired people with less experience to job titles that outrank Mr. Boyd, including Technicians II, III, Team Leader, and Management roles.

476.    By way of specific example, Defendant GLWA hired two people off of the street at the level of Maintenance Technician II, despite the fact that they don't have any experience – these people are outranking Mr. Boyd in terms of pay, perks, and benefits. One example was a white man by the name of Buddy Jones, and the other was a Supervisor whose name is not currently known.

477.    Further, Defendant GLWA has hired people into "Team Leader" and "Management Professional" roles, without any plant operation experience whatsoever.  Specifically, Mr. Boyd has discovered that Majid Khan[1], who previously worked as a Sewage Plant Operation Supervisor – essentially the same level of employee as Boyd was – has hired people of the same nationality as him, Indian, with no experience outside of a chemistry lab to roles within the WRFF plant.

478.    During Plaintiff Boyd's last several years he has spent employed with GLWA – he has not received a single raise.  Further, when Boyd was changed from a supervisor with GLWA to a Plant Maintenance Tech Level I – he was given a pay cut, and an individual named Richard Muntz was given Boyd's title with less experience.

479.    Mr. Boyd has reached out to GLWA's Human Resources (known as "OD") to discuss this issue and has been told that he is a "red-circle" employee, and that because of his former position with DWSD, he is maxed out on his pay rate and cannot receive a raise.

---

[1] Upon information and belief, Majid Khan, who has had disputes with Boyd in the past, is now retaliating against him by demoting him and refusing to give Boyd any advancement.

480.     When Mr. Boyd inquires about the pay rate range for his position – GLWA ignores his requests and does not give him direct answers, despite due and proper demand.

481.     Further, Mr. Boyd has attempted to advance to higher positions several times.  By way of specific example, Mr. Boyd applied for the position of Team Leader with GLWA, a position identical to the one which he held at DWSD.

482.     Every time Mr. Boyd applies – he receives a notice that "after a review of your qualifications, we find that we are unable to pursue your application for this position any further at this time."

483.     Remarkably, a man who used to work under Mr. Boyd's supervision, Richard Muntz, is now a team leader doing the job that Mr. Boyd applied for.

484.     Defendant GLWA's management has changed all of the dynamics in terms of job title and advancement requirements, and continually moved the goalpost in terms of the qualifications Mr. Boyd will need for advancement.  By way of specific example, Mr. Boyd was told he needed to get his Class "D" Operator's License for advancement, despite it not being a condition of employment for an identical position he held with DWSD.  Moreover, even in his role with GLWA – Mr. Boyd does not operate the equipment, he merely repairs and maintains it.

485.     Mr. Boyd, among many of the other Plaintiffs in this matter, was essentially forced to train the individual working over him while that individual would enjoy professional titles, perks, and better pay opportunities than that of Plaintiff Boyd.

486.     By way of example, Boyd has discovered that Defendant GLWA would not only not promote him, but also refused to hire other well-qualified individuals from DWSD,

such as Wesley Brent, instead choosing to hire white men with no experience to these positions.

487.     Additionally, in his employment with GLWA, Mr. Boyd was forced to move into Defendant, the Local 2920 Clerk's Union.  However, the Union has repeatedly failed to bargain in terms of pay rates, shift premiums, and benefits, despite their duty to their members that they do so.

488.     Further, Defendant, the Local 2920 Clerk's Union has failed to address numerous grievances raised regarding the racial, age, and gender discrimination ongoing at the GLWA.

### FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF HAROLD L. ROBINSON, SR.

489.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

490.     Mr. Harold Robinson is a sixty (60) year old, African American male.

491.     Plaintiff Robinson worked with DWSD and GLWA for a combined thirty (30) years – beginning as a plumbing apprentice and becoming a licensed plumber, with certifications doing back wells.

492.     For the past eleven (11) years, both at DWSD and at GLWA Mr. Robinson has had a role as a Planner, where he would assist in plant maintenance planning, and frequently would come and go from the plant in efforts to carry out company business and get materials to complete jobs.

493.     In 2015, Mr. Robinson transferred from DWSD to GLWA, and was given the exact same job function, with a title of "Plant Maintenance Technician III."

494.     Despite Mr. Robinson having no disciplinary actions on his records, and always having an exemplary performance review, Defendant GLWA claimed that Mr. Robinson falsified his attendance records.

495.     Specifically, GLWA's former employee, Mark Ragsdale, who upon information and belief, was fired for discriminatory practices at GLWA, saw Mr. Robinson walking in on his lunchbreak with food from outside of the Plant – Mr. Ragsdale accused, Mr. Robinson of leaving the plant without clocking out despite the fact that all records, including camera footage and gate records – depict that there is no possible way Mr. Robinson left the facility and falsified his time records on the date at issue.

496.     Mr. Robinson took leave from March, 2020 to June, 2020 due to COVID-19.  When Mr. Robinson returned, he was issued a suspension notice for the alleged "violation" on August 4, 2020, with a return to work date of September 2, 2020.

497.     On September 2, 2020 – Mr. Robinson attempted to return to work, where he was not permitted to enter the gate and forced off of the premises by security, and told at that point he was terminated.

498.     At no time, did anyone from Human Resources or Supervision at GLWA speak to Mr. Robinson about the alleged "falsified attendance" situation, despite there being no issue with Mr. Robinson in the past.

499.     Upon information and belief, Mr. Robinson was terminated due to his race, as GLWA had no underlying legitimate reason for his termination.  Further, the form and fashion of GLWA's termination breached Mr. Robinson's Collective Bargaining Agreement with AFSCME Local 2920.

500.     Specifically, Mr. Robinson's Supervisor, Peter Sissen, was informed that Defendant GLWA had hired a white man, by the name of Buddy Jones, to work as a planner and replace Mr. Robinson, before Mr. Robinson's termination.

501.     Upon information and belief, Buddy Jones is a white man, significantly younger and with significantly less experience than that of Harold Robinson. Mr. Jones worked at US Steel as a Planner for about one hour a day shortly before his time with GLWA – and Buddy Jones has taken Mr. Robinson's job since Mr. Robinson's termination in September, 2020.

502.     Mr. Robinson also attempted to file a grievance against GLWA for this discriminatory practice with Defendant AFSCME Local 2920. The Union Defendant never notified Mr. Robinson of the status of his grievance or any investigation, until his wrongful termination was upheld.

## COUNT I – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF LARRY MAY AGAINST GLWA

503.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

504.     Plaintiff's race was a factor that made an impact on Defendant's decision to subject him to the wrongful and discriminatory treatment as outlined throughout this Complaint.

505.     Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

506.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

73

507.    If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

508.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT II – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF LARRY MAY AGAINST GLWA

509.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

510.    During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

511.    Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

512.    Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

a.    Failing to provide a work environment free from racial discrimination;

b.    Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

     c. Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

513.     Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

514.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

515.     If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

516.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT III – VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED BY PLAINTIFF LARRY MAY AGAINST GLWA

517.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

518.     Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

519.     Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white

men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

520.     Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

521.     Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

522.     In addition to any relief under 42 USC 1981a,  plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

## COUNT IV – VIOLATION OF THE PUBLIC EMPLOYEE RELATIONS ACT (MCL 423.201 ET. SEQ.) – ASSERTED BY PLAINTIFF LARRY MAY AGAINST GLWA AND AFSCME LOCAL 2920

523.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

524.     Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

525.     Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

526.     Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts

and/or omissions in violation of Michigan's Public Employee Relations Act that have

severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

527.     Defendant GLWA has violated provisions of MCL 423.210(1), specifically by

engaging in the following acts:

   a. Discrimination in regard to hire, terms, or other conditions of employment to
      encourage or discourage membership in a labor organization;
   b. Discrimination against a public employee because he or she has given testimony or
      instituted proceedings under this act; and
   c. By refusing to bargain collectively with the representatives of its public employees.

528.     Moreover, Defendant, AFSCME Local 2920 has also violated MCL 423.210(2), by

engaging in the following acts:

   a. By Restraining or coercing public employees in the exercise of the rights, such as
      the ability to collectively bargain, and the ability to file and investigate grievances
      regarding Defendant GLWA's discriminatory employment practices;
   b. By causing, or attempting to cause a Defendant GLWA, a public employer to
      discriminate against Plaintiff, a public employee in violation of subsection MCL
      423.210(1)(c); and
   c. By refusing to engage in bargaining collectively with Defendant/Public employer,
      GLWA.

529.     As a direct and proximate result of Defendants' wrongful acts and omissions,

Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid

Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a

direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental

anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT V – VIOLATION OF THE NATIONAL LABOR RELATIONS ACT (29 USC 151 ET. SEQ.) – ASSERTED BY PLAINTIFF LARRY MAY AGAINST GLWA AND AFSCME LOCAL 2920

530.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

531.     Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

532.     Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

533.     Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of the National Labor Relations Act ("NLRA") that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

534.     Specifically, Defendants had a duty to meet and bargain in good faith.  See 29 USC 158(a)(5), (d).

535.     The rule of good-faith bargaining has two requirements: (1) that the parties physically appear at bargaining sessions and (2) that they approach negotiations with an eye toward reaching an agreement.

536.     Further, NLRA §§8(a)(5) and 8(d) impose a duty on employers and unions to bargain over mandatory subjects, such as "wages, hours and other terms and conditions of employment." 29 USC 158(a)(5), (d).

537.     Moreover, examples of mandatory subjects include wages, health and retirement benefits, hours, and in-plant food prices, *Ford Motor Co v NLRB*, 441 US 488 (1979).

538.     Here, Defendants GLWA and AFSCME LOCAL 2920 failed or otherwise refused to meet, confer, and collectively bargain in good faith regarding mandatory subjects of

Plaintiffs' Employment, such as their wages, shift premiums, hourly schedules, and retirement benefits.

539.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT VI – AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (29 USC 621 ET. SEQ.) – ASSERTED BY PLAINTIFF LARRY MAY AGAINST GLWA

540.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

541.     During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of age.

542.     Plaintiff was subjected to age discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Age Discrimination in Employment Act of 1967.

543.     Defendants, by and through their agents, servants, and employees, violated the Age Discrimination in Employment Act of 1967 by the following acts:

a.   Failing to provide a work environment free from discrimination on the basis of age;

      b.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

      c.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

544.     Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

545.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

546.     If Plaintiff had been younger, he would not have been treated in the manner described.

547.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT VII – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF ANDREW WASHINGTON AGAINST GLWA AND LAKESHORE GLOBAL

548.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

549.     Plaintiff's race was a factor that made an impact on Defendants' decision to subject him to the wrongful and discriminatory treatment as outlined throughout this Complaint.

550.     Defendants, by their agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

551.     Defendants' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

552.     If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

553.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

**COUNT VIII – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF ANDREW WASHINGTON AGAINST GLWA AND LAKESHORE GLOBAL**

554.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

555.     During Plaintiff's employment with Defendants, Defendants, through their employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

556.     Plaintiff was subjected to race discrimination by Defendants, by and through their agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

557.     Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

a.   Failing to provide a work environment free from racial discrimination;

b.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

c.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

558.    Defendants, by and through their agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

559.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

560.    If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

561.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT IX – VIOLATION OF THE PUBLIC EMPLOYEE RELATIONS ACT (MCL 423.201 ET. SEQ.) – ASSERTED BY PLAINTIFF ANDREW WASHINGTON AGAINST GLWA

562.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

563.     Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

564.     Plaintiff was at all times relevant, a member of IBEW 58.

565.     Defendant-Employer, engaged in acts and/or omissions in violation of Michigan's Public Employee Relations Act that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

566.     Defendant GLWA has violated provisions of MCL 423.210(1), specifically by engaging in the following acts:

   a.   Discrimination in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization; and

   b.   Discrimination against a public employee because he or she has given testimony or instituted proceedings under this act.

567.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT X – RETALIATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF ANDREW WASHINGTON AGAINST GLWA

568.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

569.     Defendant retaliated against Plaintiff for having complained about Defendant's discriminatory employment practices described above, in violation of Title VII, including, but not limited to:

    a.   Failing to provide a work environment free from racial discrimination;

    b.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

    c.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

570.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

571.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT XI – RETALIATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF ANDREW WASHINGTON AGAINST GLWA

572.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

573.    Defendant retaliated against Plaintiff for having complained about Defendant's discriminatory employment practices as described throughout this Complaint, in violation of the Elliot-Larsen Civil Rights Act, including, but not limited to:

    d.   Limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

e. Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition or privilege of employment;

574. Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

575. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT XII – RACIAL AND NATIONALITY DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF RAVI YELAMANCHI AGAINST GLWA

576. Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

577. Plaintiff's race was a factor that made an impact on Defendant's decision to subject him to the wrongful and discriminatory treatment as outlined throughout this Complaint.

578. Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not Indian in the terms and conditions of employment, based on an unlawful consideration of race.

579. Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

580. If Plaintiff had been a race other than Indian, he would not have been treated in the manner described.

581.     If Plaintiff had been a nationality other than Indian, he would not have been treated in the manner described.

582.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

### COUNT XIII – RACIAL AND NATIONALITY DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF RAVI YELAMANCHI AGAINST GLWA

583.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

584.     During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

585.     Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

586.     Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

   a. Failing to provide a work environment free from racial discrimination;

   b. Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

c. Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

587.     Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

588.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

589.     If Plaintiff had been a race and/or nationality other than Indian, he would not have been treated in the manner described.

590.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT XIV– RETALIATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF RAVI YELAMANCHI AGAINST GLWA

591.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

592.     Defendant retaliated against Plaintiff for having complained about Defendant's discriminatory employment practices described above, in violation of Title VII, including, but not limited to:

a. Failing to provide a work environment free from racial discrimination;

    b.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

    c.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

593.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

594.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT XV – RETALIATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF RAVI YELAMANCHI AGAINST GLWA

595.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

596.    Defendant retaliated against Plaintiff for having complained about Defendant's discriminatory employment practices as described throughout this Complaint, in violation of the Elliot-Larsen Civil Rights Act, including, but not limited to:

    a.   Limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

    b. Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition or privilege of employment;

597. Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

598. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

**COUNT XVI – AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (29 USC 621 ET. SEQ.) – ASSERTED BY PLAINTIFF RAVI YELAMANCHI AGAINST GLWA**

599. Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

600. During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of age.

601. Plaintiff was subjected to age discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Age Discrimination in Employment Act of 1967.

602. Defendants, by and through their agents, servants, and employees, violated the Age Discrimination in Employment Act of 1967 by the following acts:

    a. Failing to provide a work environment free from discrimination on the basis of age;

b. Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

c. Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

603.     Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

604.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

605.     If Plaintiff had been younger, he would not have been treated in the manner described.

606.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT XVII – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF HOWARD HILL, JR. AGAINST GLWA

607.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

608.     Plaintiff's race was a factor that made an impact on Defendant's decision to subject him to the wrongful and discriminatory treatment as outlined throughout this Complaint.

609.     Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

610.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

611.     If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

612.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

### COUNT XVIII – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF HOWARD HILL, JR. AGAINST GLWA

613.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

614.     During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

615.     Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

616.     Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

    a.   Failing to provide a work environment free from racial discrimination;

    b.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

    c.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

617.     Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

618.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

619.     If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

620.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

**COUNT XIX – VIOLATION OF THE PUBLIC EMPLOYEE RELATIONS ACT (MCL 423.201 ET. SEQ.) – ASSERTED BY PLAINTIFF HOWARD HILL, JR. AGAINST GLWA**

621.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

622.    Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

623.    Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

624.    Defendant-Employer, engaged in acts and/or omissions in violation of Michigan's Public Employee Relations Act that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

625.    Defendant GLWA has violated provisions of MCL 423.210(1), specifically by engaging in the following acts:

   a. Discrimination in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization;

   b. Discrimination against a public employee because he or she has given testimony or instituted proceedings under this act; and

   c. By refusing to bargain collectively with the representatives of its public employees.

626.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT XX – VIOLATION OF THE NATIONAL LABOR RELATIONS ACT (29 USC 151 ET. SEQ.) – ASSERTED BY PLAINTIFF HOWARD HILL, JR. AGAINST GLWA AND AFSCME LOCAL 2920

627.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

628.     Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

629.     Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

630.     Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of the National Labor Relations Act ("NLRA") that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

631.     Specifically, Defendants had a duty to meet and bargain in good faith. See 29 USC 158(a)(5), (d).

632.     The rule of good-faith bargaining has two requirements: (1) that the parties physically appear at bargaining sessions and (2) that they approach negotiations with an eye toward reaching an agreement.

633.     Further, NLRA §§8(a)(5) and 8(d) impose a duty on employers and unions to bargain over mandatory subjects, such as "wages, hours and other terms and conditions of employment." 29 USC 158(a)(5), (d).

634.     Moreover, examples of mandatory subjects include wages, health and retirement benefits, hours, and in-plant food prices, *Ford Motor Co v NLRB*, 441 US 488 (1979).

635.     Here, Defendants GLWA and AFSCME LOCAL 2920 failed or otherwise refused to meet, confer, and collectively bargain in good faith regarding mandatory subjects of Plaintiffs' Employment, such as their wages, shift premiums, hourly schedules, and retirement benefits.

636.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT XXI – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF MAURIA DAVIS AGAINST GLWA

637.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

638.     Plaintiff's race was a factor that made an impact on Defendant's decision to subject him to the wrongful and discriminatory treatment as outlined throughout this Complaint.

639.     Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

640.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

641.     If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

642.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT XXII – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF MAURIA DAVIS AGAINST GLWA

643.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

644.     During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

645.     Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

646.     Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

   a.  Failing to provide a work environment free from racial discrimination;

   b.  Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

   c.  Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

647.     Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

648.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

649.     If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

650.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT XXIII – VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED BY PLAINTIFF MAURIA DAVIS AGAINST GLWA

651.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

652.     Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

653.     Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

654.     Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

655.    Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

656.    In addition to any relief under 42 USC 1981a,  plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

## Count XXIV – Violation of the Public Employee Relations Act (MCL 423.201 et. seq.) – Asserted by Plaintiff Mauria Davis Against Defendants GLWA and AFSCME Local 2920

657.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

658.    Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

659.    Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

660.    Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of Michigan's Public Employee Relations Act that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

661.    Defendant GLWA has violated provisions of MCL 423.210(1), specifically by engaging in the following acts:

a. Discrimination in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization;

b. Discrimination against a public employee because he or she has given testimony or instituted proceedings under this act; and

c. By refusing to bargain collectively with the representatives of its public employees.

662.     Moreover, Defendant, AFSCME Local 2920 has also violated MCL 423.210(2), by engaging in the following acts:

d. By Restraining or coercing public employees in the exercise of the rights, such as the ability to collectively bargain, and the ability to file and investigate grievances regarding Defendant GLWA's discriminatory employment practices;

e. By causing, or attempting to cause a Defendant GLWA, a public employer to discriminate against Plaintiff, a public employee in violation of subsection MCL 423.210(1)(c); and

f. By refusing to engage in bargaining collectively with Defendant/Public employer, GLWA.

663.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT XXV – VIOLATION OF THE NATIONAL LABOR RELATIONS ACT (29 USC 151 ET. SEQ.) – ASSERTED BY PLAINTIFF MAURIA DAVIS AGAINST DEFENDANTS GLWA AND AFSCME LOCAL 2920

664.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

665.     Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

666.     Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

667.     Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of the National Labor Relations Act ("NLRA") that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

668.     Specifically, Defendants had a duty to meet and bargain in good faith.  See 29 USC 158(a)(5), (d).

669.     The rule of good-faith bargaining has two requirements: (1) that the parties physically appear at bargaining sessions and (2) that they approach negotiations with an eye toward reaching an agreement.

670.     Further, NLRA §§8(a)(5) and 8(d) impose a duty on employers and unions to bargain over mandatory subjects, such as "wages, hours and other terms and conditions of employment." 29 USC 158(a)(5), (d).

671.     Moreover, examples of mandatory subjects include wages, health and retirement benefits, hours, and in-plant food prices, *Ford Motor Co v NLRB*, 441 US 488 (1979).

672.     Here, Defendants GLWA and AFSCME LOCAL 2920 failed or otherwise refused to meet, confer, and collectively bargain in good faith regarding mandatory subjects of Plaintiffs' Employment, such as their wages, shift premiums, hourly schedules, and retirement benefits.

673.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a

direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

### COUNT XXVI – AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (29 USC 621 ET. SEQ.) – ASSERTED BY PLAINTIFF MAURIA DAVIS AGAINST GLWA

674.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

675.     During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of age.

676.     Plaintiff was subjected to age discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Age Discrimination in Employment Act of 1967.

677.     Defendants, by and through their agents, servants, and employees, violated the Age Discrimination in Employment Act of 1967 by the following acts:

   a.   Failing to provide a work environment free from discrimination on the basis of age;

   b.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

   c.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

678.     Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

679.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

680.     If Plaintiff had been younger, he would not have been treated in the manner described.

681.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

### COUNT XXVII – VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT OF 1993 (29 USC 2601 ET. SEQ.) – ASSERTED BY PLAINTIFF MAURIA DAVIS AGAINST GLWA

682.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

683.     Plaintiff did in fact, timely request FMLA Leave due to the aforementioned medical complications as stated throughout this Complaint.

684.     Plaintiff's medical leave was protected under FMLA and approved by the Defendant, GLWA, pursuant to the terms of Plaintiff's Employment Agreement with Defendant.

685.     Defendant violated the FMLA by harassing, discriminating against, and/or retaliating, including termination against the Plaintiff in significant part because he exercised rights under the FMLA, by terminating Plaintiff.

686.     As a direct and proximate result, Plaintiff has sustained damages including, but not limited to loss of income and attorney fees.

## COUNT XXVIII – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 USC 126 ET. SEQ.) – ASSERTED BY PLAINTIFF MAURIA DAVIS AGAINST GLWA

687.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

688.     At all relevant times, Plaintiff was an individual with a *disability,* in that he has a physical impairment that substantially limits one or more of his major life activities and has a record of the impairment.

689.     Plaintiff is qualified for the position, as he is an individual who can perform the essential functions of his job as laid out above in this Complaint.

690.     The ADA makes it unlawful to discriminate against a qualified individual in the terms and conditions of employment on the basis of disability. 42 USC 12112(a).

691.     By terminating Plaintiff Davis following his to return to work, Defendant discriminated against Plaintiff because of his disability.

692.     Defendant conducted itself with malice or with reckless indifference to Plaintiff's federally protected rights.

693.     As a direct and proximate result of Defendant's discrimination on the basis of disability, Plaintiff has suffered lost wages, benefits, and loss of employment opportunities. In addition, Defendant's failure to make reasonable accommodation to Plaintiff has caused or continues to cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

## COUNT XXIX– RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF APRIL LEGREAIR AGAINST GLWA

694. Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

695. Plaintiff's race was a factor that made an impact on Defendant's decision to subject her to the wrongful and discriminatory treatment as outlined throughout this Complaint.

696. Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

697. Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

698. If Plaintiff had been a race other than African American, she would not have been treated in the manner described.

699. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT XXX – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF APRIL LEGREAIR AGAINST GLWA

700. Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

701. During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

702.    Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

703.    Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

   a.  Failing to provide a work environment free from racial discrimination;

   b.  Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

   c.  Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition, or privilege of employment.

704.    Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

705.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

706.    If Plaintiff had been a race other than African American, she would not have been treated in the manner described.

707.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

**COUNT XXXI – RETALIATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF APRIL LEGREAIR AGAINST GLWA**

708.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

709.     Defendant retaliated against Plaintiff for having complained about Defendant's discriminatory employment practices described above, in violation of Title VII, including, but not limited to:

   a.   Failing to provide a work environment free from racial discrimination;

   b.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

   c.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition, or privilege of employment.

710.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

711.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

**COUNT XXXII – RETALIATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF APRIL LEGREAIR AGAINST GLWA**

712.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

713.     Defendant retaliated against Plaintiff for having complained about Defendant's discriminatory employment practices as described throughout this Complaint, in violation of the Elliot-Larsen Civil Rights Act, including, but not limited to:

   a.  Limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

   b.  Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition or privilege of employment;

714.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

715.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

### COUNT XXXIII– AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (29 USC 621 ET. SEQ.) – ASSERTED BY PLAINTIFF APRIL LEGREAIR AGAINST GLWA

716.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

717.     During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of age.

718.     Plaintiff was subjected to age discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Age Discrimination in Employment Act of 1967.

719.     Defendants, by and through their agents, servants, and employees, violated the Age Discrimination in Employment Act of 1967 by the following acts:

   a.   Failing to provide a work environment free from discrimination on the basis of age;

   b.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

   c.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition, or privilege of employment.

720.     Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

721.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

722.     If Plaintiff had been younger, she would not have been treated in the manner described.

723.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

**COUNT XXXIV – PAY DISCRIMINATION BASED ON GENDER PURSUANT TO THE EQUAL PAY ACT (29 USC 206 ET. SEQ.) – ASSERTED BY PLAINTIFF APRIL LEGREAIR AGAINST GLWA**

724.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

725.     Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Equal Pay Act.

726.     Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

727.     Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white male employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

728.     Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Equal Pay Act.

**COUNT XXXV – PAY DISCRIMINATION BASED ON RACE IN VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED BY PLAINTIFF APRIL LEGREAIR AGAINST GLWA**

729.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

730.     Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

731.     Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

732.     Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

733.     Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

734.     In addition to any relief under 42 USC 1981a,  plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

**COUNT XXXVI – VIOLATION OF THE PUBLIC EMPLOYEE RELATIONS ACT (MCL 423.201 ET. SEQ.) – ASSERTED BY PLAINTIFF APRIL LEGREAIR AGAINST DEFENDANTS GLWA AND AFSCME LOCAL 2920**

735.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

736.     Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

737.     Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

738.     Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of Michigan's Public Employee Relations Act that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

739.     Defendant GLWA has violated provisions of MCL 423.210(1), specifically by engaging in the following acts:

   a.  Discrimination in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization;
   b.  Discrimination against a public employee because he or she has given testimony or instituted proceedings under this act; and
   c.  By refusing to bargain collectively with the representatives of its public employees.

740.     Moreover, Defendant, AFSCME Local 2920 has also violated MCL 423.210(2), by engaging in the following acts:

   d.  By Restraining or coercing public employees in the exercise of the rights, such as the ability to collectively bargain, and the ability to file and investigate grievances regarding Defendant GLWA's discriminatory employment practices;
   e.  By causing, or attempting to cause a Defendant GLWA, a public employer to discriminate against Plaintiff, a public employee in violation of subsection MCL 423.210(1)(c); and
   f.  By refusing to engage in bargaining collectively with Defendant/Public employer, GLWA.

741.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## Count XXXVII – Violation of the National Labor Relations Act (29 USC 151 et. seq.) – Asserted by Plaintiff April Legreair Against Defendants GLWA and AFSCME Local 2920

742.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

743.    Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

744.    Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

745.    Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of the National Labor Relations Act ("NLRA") that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

746.    Specifically, Defendants had a duty to meet and bargain in good faith.  See 29 USC 158(a)(5), (d).

747.    The rule of good-faith bargaining has two requirements: (1) that the parties physically appear at bargaining sessions and (2) that they approach negotiations with an eye toward reaching an agreement.

748.    Further, NLRA §§8(a)(5) and 8(d) impose a duty on employers and unions to bargain over mandatory subjects, such as "wages, hours and other terms and conditions of employment." 29 USC 158(a)(5), (d).

749.    Moreover, examples of mandatory subjects include wages, health and retirement benefits, hours, and in-plant food prices, *Ford Motor Co v NLRB*, 441 US 488 (1979).

750.    Here, Defendants GLWA and AFSCME LOCAL 2920 failed or otherwise refused to meet, confer, and collectively bargain in good faith regarding mandatory subjects of Plaintiffs' Employment, such as their wages, shift premiums, hourly schedules, and retirement benefits.

751.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT XXXVIII– RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF AURELIA MORGAN AGAINST GLWA

752.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

753.    Plaintiff's race was a factor that made an impact on Defendant's decision to subject her to the wrongful and discriminatory treatment as outlined throughout this Complaint.

754.    Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

755.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

756.    If Plaintiff had been a race other than African American, she would not have been treated in the manner described.

757.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT XXXIX – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF AURELIA MORGAN AGAINST GLWA

758.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

759.     During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

760.     Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

761.     Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

a.  Failing to provide a work environment free from racial discrimination;

b.  Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

c.  Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition, or privilege of employment.

762.     Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

763.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

764.     If Plaintiff had been a race other than African American, she would not have been treated in the manner described.

765.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

### COUNT XL – RETALIATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF AURELIA MORGAN AGAINST GLWA

766.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

767.     Defendant retaliated against Plaintiff for having complained about Defendant's discriminatory employment practices described above, in violation of Title VII, including, but not limited to:

   d.   Failing to provide a work environment free from racial discrimination;

   e.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

      f.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

768.      Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

769.      As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

**COUNT XLI – RETALIATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF AURELIA MORGAN AGAINST GLWA**

770.      Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

771.      Defendant retaliated against Plaintiff for having complained about Defendant's discriminatory employment practices as described throughout this Complaint, in violation of the Elliot-Larsen Civil Rights Act, including, but not limited to:

      a.   Limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

      b.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition or privilege of employment;

772.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

773.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

### COUNT XLII– AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (29 USC 621 ET. SEQ.) – ASSERTED BY PLAINTIFF AURELIA MORGAN AGAINST GLWA

774.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

775.     During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of age.

776.     Plaintiff was subjected to age discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Age Discrimination in Employment Act of 1967.

777.     Defendants, by and through their agents, servants, and employees, violated the Age Discrimination in Employment Act of 1967 by the following acts:

   a.  Failing to provide a work environment free from discrimination on the basis of age;

   b.  Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

c. Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition, or privilege of employment.

778. Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

779. Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

780. If Plaintiff had been younger, she would not have been treated in the manner described.

781. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT XLIII – PAY DISCRIMINATION BASED ON GENDER PURSUANT TO THE EQUAL PAY ACT (29 USC 206 ET. SEQ.) – ASSERTED BY PLAINTIFF AURELIA MORGAN AGAINST GLWA

782. Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

783. Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Equal Pay Act.

784. Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white

men to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

785.     Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white male employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

786.     Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Equal Pay Act.

**COUNT XLIV – PAY DISCRIMINATION BASED ON RACE IN VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED BY PLAINTIFF AURELIA MORGAN AGAINST GLWA**

787.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

788.     Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

789.     Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

790.     Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

791.     Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

792.     In addition to any relief under 42 USC 1981a, plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

## COUNT XLV – VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT OF 1993 (29 USC 2601 ET. SEQ.) – ASSERTED BY PLAINTIFF AURELIA MORGAN AGAINST GLWA

793.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

794.     Plaintiff did in fact, timely request FMLA Leave due to the aforementioned medical complications as stated throughout this Complaint.

795.     Plaintiff's medical leave was protected under FMLA and approved by the Defendant, GLWA, pursuant to the terms of Plaintiff's Employment Agreement with Defendant.

796.     Defendant violated the FMLA by harassing, discriminating against, and/or retaliating, including suspension of the Plaintiff in significant part because she exercised rights under the FMLA, by suspending Plaintiff for "going AWOL."

797.     Further, Defendant discriminated against Plaintiff by selectively enforcing this rule against people who were not of the same race as that of Plaintiff.

798.    As a direct and proximate result, Plaintiff has sustained damages including, but not limited to loss of income and attorney fees.

**COUNT XLVI – VIOLATION OF THE FAIR LABOR STANDARDS ACT (29 USC 203 ET. SEQ.) – ASSERTED BY PLAINTIFF AURELIA MORGAN AGAINST GLWA**

795.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

796.    Defendant, GLWA was required to compensate Plaintiff with reasonable sick leave under the federal Fair Labor Standards Act ("FLSA"), 29 USC 201 *et seq*., as interpreted and applied under state and federal law.

797.    Despite repeated requests and demands, Defendant has failed and/or refused to roll Plaintiff Morgan's sick leave over from DWSD, despite representations that it would do so in consideration for her employment with GLWA.

798.    Defendant's failure and/or refusal to award Plaintiff a reasonable accommodation of sick leave constitutes a material violation of the FLSA.

799.    As a direct and proximate result of Defendant's violation of the FLSA, Plaintiff has been damaged, and continues to suffer damages in an amount in excess of $25,000.00, in addition to costs, expenses, and legal fees.

**COUNT XLVII – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF BRUCE BAKER AGAINST GLWA**

800.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

801.    Plaintiff's race was a factor that made an impact on Defendant's decision to subject him to the wrongful and discriminatory treatment as outlined throughout this Complaint.

802.     Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

803.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

804.     If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

805.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT XLVIII – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF BRUCE BAKER AGAINST GLWA

806.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

807.     During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

808.     Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

809.     Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

    a.  Failing to provide a work environment free from racial discrimination;

    b.  Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

    c.  Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

810.    Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

811.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

812.    If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

813.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment

## COUNT XLIX – VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED BY PLAINTIFF BRUCE BAKER AGAINST GLWA

814.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

815.    Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

816.     Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

817.     Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

818.     Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

819.     In addition to any relief under 42 USC 1981a, plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

### COUNT L – VIOLATION OF THE PUBLIC EMPLOYEE RELATIONS ACT (MCL 423.201 ET. SEQ.) – ASSERTED BY PLAINTIFF BRUCE BAKER AGAINST GLWA AND AFSCME LOCAL 2920

820.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

821.     Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

822.     Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

823.     Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of Michigan's Public Employee Relations Act that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

824.     Defendant GLWA has violated provisions of MCL 423.210(1), specifically by engaging in the following acts:

   a. Discrimination in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization;
   b. Discrimination against a public employee because he or she has given testimony or instituted proceedings under this act; and
   c. By refusing to bargain collectively with the representatives of its public employees.

825.     Moreover, Defendant, AFSCME Local 2920 has also violated MCL 423.210(2), by engaging in the following acts:

   a. By Restraining or coercing public employees in the exercise of the rights, such as the ability to collectively bargain, and the ability to file and investigate grievances regarding Defendant GLWA's discriminatory employment practices;
   b. By causing, or attempting to cause a Defendant GLWA, a public employer to discriminate against Plaintiff, a public employee in violation of subsection MCL 423.210(1)(c); and
   c. By refusing to engage in bargaining collectively with Defendant/Public employer, GLWA.

826.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## Count LI – Violation of the National Labor Relations Act (29 USC 151 et. seq.) – Asserted by Plaintiff Bruce Baker Against GLWA and AFSCME Local 2920

827.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

828.     Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

829.     Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

830.     Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of the National Labor Relations Act ("NLRA") that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

831.     Specifically, Defendants had a duty to meet and bargain in good faith.  See 29 USC 158(a)(5), (d).

832.     The rule of good-faith bargaining has two requirements: (1) that the parties physically appear at bargaining sessions and (2) that they approach negotiations with an eye toward reaching an agreement.

833.     Further, NLRA §§8(a)(5) and 8(d) impose a duty on employers and unions to bargain over mandatory subjects, such as "wages, hours and other terms and conditions of employment." 29 USC 158(a)(5), (d).

834.     Moreover, examples of mandatory subjects include wages, health and retirement benefits, hours, and in-plant food prices, *Ford Motor Co v NLRB*, 441 US 488 (1979).

835.     Here, Defendants GLWA and AFSCME Local 2920 failed or otherwise refused to meet, confer, and collectively bargain in good faith regarding mandatory subjects of Plaintiffs' Employment, such as their wages, shift premiums, hourly schedules, and retirement benefits.

836.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT LII – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF JOHN HALL AGAINST GLWA

837.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

838.     Plaintiff's race was a factor that made an impact on Defendant's decision to subject him to the wrongful and discriminatory treatment as outlined throughout this Complaint.

839.     Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

840.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

841.     If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

842.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

**COUNT LIII – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF JOHN HALL AGAINST GLWA**

843.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

844.     During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

845.     Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

846.     Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

a.  Failing to provide a work environment free from racial discrimination;

b.  Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

c.  Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

847.     Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

848.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

849.     If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

850.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment

## COUNT LIV – VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED BY PLAINTIFF JOHN HALL AGAINST GLWA

851.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

852.     Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

853.     Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

854.     Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages,

benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

855.    Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

856.    In addition to any relief under 42 USC 1981a,  plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

## COUNT LV – VIOLATION OF THE PUBLIC EMPLOYEE RELATIONS ACT (MCL 423.201 ET. SEQ.) – ASSERTED BY PLAINTIFF JOHN HALL AGAINST GLWA AND AFSCME LOCAL 2920

857.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

858.    Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

859.    Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

860.    Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of Michigan's Public Employee Relations Act that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

861.    Defendant GLWA has violated provisions of MCL 423.210(1), specifically by engaging in the following acts:

a. Discrimination in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization;

b. Discrimination against a public employee because he or she has given testimony or instituted proceedings under this act; and

c. By refusing to bargain collectively with the representatives of its public employees.

862.     Moreover, Defendant, AFSCME Local 2920 has also violated MCL 423.210(2), by engaging in the following acts:

a. By Restraining or coercing public employees in the exercise of the rights, such as the ability to collectively bargain, and the ability to file and investigate grievances regarding Defendant GLWA's discriminatory employment practices;

b. By causing, or attempting to cause a Defendant GLWA, a public employer to discriminate against Plaintiff, a public employee in violation of subsection MCL 423.210(1)(c); and

c. By refusing to engage in bargaining collectively with Defendant/Public employer, GLWA.

863.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT LVI – VIOLATION OF THE NATIONAL LABOR RELATIONS ACT (29 USC 151 ET. SEQ.) – ASSERTED BY PLAINTIFF JOHN HALL AGAINST GLWA AND AFSCME LOCAL 2920

864.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

865.     Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

866.     Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

867.     Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of the National Labor Relations Act ("NLRA") that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

868.     Specifically, Defendants had a duty to meet and bargain in good faith.  See 29 USC 158(a)(5), (d).

869.     The rule of good-faith bargaining has two requirements: (1) that the parties physically appear at bargaining sessions and (2) that they approach negotiations with an eye toward reaching an agreement.

870.     Further, NLRA §§8(a)(5) and 8(d) impose a duty on employers and unions to bargain over mandatory subjects, such as "wages, hours and other terms and conditions of employment." 29 USC 158(a)(5), (d).

871.     Moreover, examples of mandatory subjects include wages, health and retirement benefits, hours, and in-plant food prices, *Ford Motor Co v NLRB*, 441 US 488 (1979).

872.     Here, Defendants GLWA and AFSCME LOCAL 2920 failed or otherwise refused to meet, confer, and collectively bargain in good faith regarding mandatory subjects of Plaintiffs' Employment, such as their wages, shift premiums, hourly schedules, and retirement benefits.

873.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT LVII – AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (29 USC 621 ET. SEQ.) – ASSERTED BY PLAINTIFF JOHN HALL AGAINST GLWA

874.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

875.     During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of age.

876.     Plaintiff was subjected to age discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Age Discrimination in Employment Act of 1967.

877.     Defendants, by and through their agents, servants, and employees, violated the Age Discrimination in Employment Act of 1967 by the following acts:

a.   Failing to provide a work environment free from discrimination on the basis of age;

b.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

c.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

878.     Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

879.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

880.     If Plaintiff had been younger, he would not have been treated in the manner described.

881.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT LVIII – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF RICHARD KING AGAINST GLWA

882.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

883.     Plaintiff's race was a factor that made an impact on Defendant's decision to subject him to the wrongful and discriminatory treatment as outlined throughout this Complaint.

884.     Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

885.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

886.     If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

887.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

**COUNT LIX – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF RICHARD KING AGAINST GLWA**

888.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

889.    During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

890.    Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

891.    Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

a.    Failing to provide a work environment free from racial discrimination;

b.    Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

c.    Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

892.     Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

893.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

894.     If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

895.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT LX – VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED BY PLAINTIFF RICHARD KING AGAINST GLWA

896.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

897.     Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

898.     Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

899.     Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages,

benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

900. Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

901. In addition to any relief under 42 USC 1981a, plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

### COUNT LXI – AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (29 USC 621 ET. SEQ.) – ASSERTED BY PLAINTIFF RICHARD KING AGAINST GLWA

902. Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

903. During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of age.

904. Plaintiff was subjected to age discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Age Discrimination in Employment Act of 1967.

905. Defendants, by and through their agents, servants, and employees, violated the Age Discrimination in Employment Act of 1967 by the following acts:

    a. Failing to provide a work environment free from discrimination on the basis of age;

      b.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

      c.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

906.     Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

907.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

908.     If Plaintiff had been younger, he would not have been treated in the manner described.

909.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT LXII – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF CYNTHIA STOKES AGAINST GLWA

910.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

911.     Plaintiff's race was a factor that made an impact on Defendant's decision to subject her to the wrongful and discriminatory treatment as outlined throughout this Complaint.

912.     Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

913.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

914.     If Plaintiff had been a race other than African American, she would not have been treated in the manner described.

915.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT LXIII – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF CYNTHIA STOKES AGAINST GLWA

916.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

917.     During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

918.     Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

919.     Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

a. Failing to provide a work environment free from racial discrimination;

b. Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

c. Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition, or privilege of employment.

920. Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

921. Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

922. If Plaintiff had been a race other than African American, she would not have been treated in the manner described.

923. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment

## COUNT LXIV – VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED BY PLAINTIFF CYNTHIA STOKES AGAINST GLWA

924. Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

925.      Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

926.      Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

927.      Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

928.      Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

929.      In addition to any relief under 42 USC 1981a, plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

## COUNT LXV – PAY DISCRIMINATION BASED ON GENDER PURSUANT TO THE EQUAL PAY ACT (29 USC 206 ET. SEQ.) – ASSERTED BY PLAINTIFF CYNTHIA STOKES AGAINST GLWA

930.      Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

931.     Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Equal Pay Act.

932.     Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

933.     Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white male employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

934.     Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Equal Pay Act.

## COUNT LXVII– AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (29 USC 621 ET. SEQ.) – ASSERTED BY PLAINTIFF CYNTHIA STOKES AGAINST GLWA

935.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

936.     During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of age.

937.     Plaintiff was subjected to age discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Age Discrimination in Employment Act of 1967.

938.     Defendants, by and through their agents, servants, and employees, violated the Age Discrimination in Employment Act of 1967 by the following acts:

  a.  Failing to provide a work environment free from discrimination on the basis of age;

  b.  Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

  c.  Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition, or privilege of employment.

939.     Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

940.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

941.     If Plaintiff had been younger, she would not have been treated in the manner described.

942.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

**COUNT LXVII – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF GILBERTO GARZA AGAINST GLWA**

943.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

944.     Plaintiff's race was a factor that made an impact on Defendant's decision to subject him to the wrongful and discriminatory treatment as outlined throughout this Complaint.

945.     Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not Hispanic in the terms and conditions of employment, based on an unlawful consideration of race.

946.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

947.     If Plaintiff had been a race other than Hispanic, he would not have been treated in the manner described.

948.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

**COUNT LXVIII – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF GILBERTO GARZA AGAINST GLWA**

949.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

950.     During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

144

951.     Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

952.     Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

   a.  Failing to provide a work environment free from racial discrimination;

   b.  Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

   c.  Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

953.     Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

954.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

955.     If Plaintiff had been a race other than Hispanic, he would not have been treated in the manner described.

956.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT LXIX – VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED BY PLAINTIFF GILBERTO GARZA AGAINST GLWA

957.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

958.     Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

959.     Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

960.     Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

961.     Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

962.     In addition to any relief under 42 USC 1981a,  plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

### COUNT LXX– AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (29 USC 621 ET. SEQ.) – ASSERTED BY PLAINTIFF GILBERTO GARZA AGAINST GLWA

963.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

964.    During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of age.

965.    Plaintiff was subjected to age discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Age Discrimination in Employment Act of 1967.

966.    Defendants, by and through their agents, servants, and employees, violated the Age Discrimination in Employment Act of 1967 by the following acts:

   a.   Failing to provide a work environment free from discrimination on the basis of age;

   b.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

   c.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

967.    Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

968.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

969.     If Plaintiff had been younger, he would not have been treated in the manner described.

970.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

### COUNT LXXI – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF ROBERT WILLIAMS AGAINST GLWA

971.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

972.     Plaintiff's race was a factor that made an impact on Defendant's decision to subject him to the wrongful and discriminatory treatment as outlined throughout this Complaint.

973.     Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

974.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

975.     If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

976.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT LXXII – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF ROBERT WILLIAMS AGAINST GLWA

977.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

978.     During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

979.     Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

980.     Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

   a. Failing to provide a work environment free from racial discrimination;

   b. Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

   c. Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

981.     Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

982.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

983.     If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

984.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment

**COUNT LXXIII – VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED BY PLAINTIFF ROBERT WILLIAMS AGAINST GLWA**

985.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

986.     Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

987.     Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

988.     Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages,

benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

989.     Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

990.     In addition to any relief under 42 USC 1981a,  plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

## COUNT LXXIV – VIOLATION OF THE PUBLIC EMPLOYEE RELATIONS ACT (MCL 423.201 ET. SEQ.) – ASSERTED BY PLAINTIFF ROBERT WILLIAMS AGAINST GLWA AND  AFSCME LOCAL 2920

991.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

992.     Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

993.     Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

994.     Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of Michigan's Public Employee Relations Act that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

995.    Defendant GLWA has violated provisions of MCL 423.210(1), specifically by engaging in the following acts:

a. Discrimination in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization;

b. Discrimination against a public employee because he or she has given testimony or instituted proceedings under this act; and

c. By refusing to bargain collectively with the representatives of its public employees.

996.    Moreover, Defendant, AFSCME Local 2920 has also violated MCL 423.210(2), by engaging in the following acts:

a. By Restraining or coercing public employees in the exercise of the rights, such as the ability to collectively bargain, and the ability to file and investigate grievances regarding Defendant GLWA's discriminatory employment practices;

b. By causing, or attempting to cause a Defendant GLWA, a public employer to discriminate against Plaintiff, a public employee in violation of subsection MCL 423.210(1)(c); and

c. By refusing to engage in bargaining collectively with Defendant/Public employer, GLWA.

997.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT LXXV – VIOLATION OF THE NATIONAL LABOR RELATIONS ACT (29 USC 151 ET. SEQ.) – ASSERTED BY PLAINTIFF ROBERT WILLIAMS AGAINST GLWA AND AFSCME LOCAL 2920

998.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

999.    Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

1000.     Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

1001.     Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of the National Labor Relations Act ("NLRA") that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

1002.     Specifically, Defendants had a duty to meet and bargain in good faith.  See 29 USC 158(a)(5), (d).

1003.     The rule of good-faith bargaining has two requirements: (1) that the parties physically appear at bargaining sessions and (2) that they approach negotiations with an eye toward reaching an agreement.

1004.     Further, NLRA §§8(a)(5) and 8(d) impose a duty on employers and unions to bargain over mandatory subjects, such as "wages, hours and other terms and conditions of employment." 29 USC 158(a)(5), (d).

1005.     Moreover, examples of mandatory subjects include wages, health and retirement benefits, hours, and in-plant food prices, *Ford Motor Co v NLRB*, 441 US 488 (1979).

1006.     Here, Defendants GLWA and AFSCME LOCAL 2920 failed or otherwise refused to meet, confer, and collectively bargain in good faith regarding mandatory subjects of Plaintiffs' Employment, such as their wages, shift premiums, hourly schedules, and retirement benefits.

1007.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a

direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

### COUNT LXXVI – GENDER DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF KIMBERLEY GARZA AGAINST GLWA

1008.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1009.    Plaintiff's gender was a factor that made an impact on Defendant's decision to subject her to the wrongful and discriminatory treatment as outlined throughout this Complaint.

1010.    Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not females in the terms and conditions of employment, based on an unlawful consideration of gender.

1011.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1012.    If Plaintiff had been a gender other than female, she would not have been treated in the manner described.

1013.    As a direct and proximate result of Defendant's wrongful acts and omssions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

### COUNT LXXVII – GENDER DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF KIMBERLEY GARZA AGAINST GLWA

1014.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1015.    During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of gender.

1016.    Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

1017.    Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

   a.   Failing to provide a work environment free from gender discrimination;

   b.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

   c.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition, or privilege of employment.

1018.    Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of gender and acted in accordance with that predisposition.

1019.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1020.    If Plaintiff had been a gender other than female, she would not have been treated in the manner described.

1021.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment

### COUNT LXXVIII – RETALIATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF KIMBERLEY GARZA AGAINST GLWA

1022.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1023.    Defendant retaliated against Plaintiff for having complained about Defendant's discriminatory employment practices described above, in violation of Title VII, including, but not limited to:

    a.   Failing to provide a work environment free from gender discrimination;

    b.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

    c.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition, or privilege of employment.

1024.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1025.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT LXXIX – RETALIATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF KIMBERLEY GARZA AGAINST GLWA

1026.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1027.     Defendant retaliated against Plaintiff for having complained about Defendant's discriminatory employment practices as described throughout this Complaint, in violation of the Elliot-Larsen Civil Rights Act, including, but not limited to:

    a.   Limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

    b.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition or privilege of employment;

1028.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1029.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

**COUNT LXXX – AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (29 USC 621 ET. SEQ.) – ASSERTED BY PLAINTIFF KIMBERLEY GARZA AGAINST GLWA**

1030. Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1031. During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of age.

1032. Plaintiff was subjected to age discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Age Discrimination in Employment Act of 1967.

1033. Defendants, by and through their agents, servants, and employees, violated the Age Discrimination in Employment Act of 1967 by the following acts:

   a. Failing to provide a work environment free from discrimination on the basis of age;

   b. Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

   c. Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition, or privilege of employment.

1034. Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

1035.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1036.    If Plaintiff had been younger, she would not have been treated in the manner described.

1037.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

**COUNT LXXXI – PAY DISCRIMINATION BASED ON GENDER PURSUANT TO THE EQUAL PAY ACT (29 USC 206 ET. SEQ.) – ASSERTED BY PLAINTIFF KIMBERLEY GARZA AGAINST GLWA**

1038.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1039.    Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Equal Pay Act.

1040.    Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

1041.    Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white male employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

1042.    Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Equal Pay Act.

### COUNT LXXXII– VIOLATION OF THE PUBLIC EMPLOYEE RELATIONS ACT (MCL 423.201 ET. SEQ.) – ASSERTED BY PLAINTIFF KIMBERLEY GARZA AGAINST GLWA AND AFSCME LOCAL 2920

1043.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1044.    Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

1045.    Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

1046.    Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of Michigan's Public Employee Relations Act that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

1047.    Defendant GLWA has violated provisions of MCL 423.210(1), specifically by engaging in the following acts:

   a. Discrimination in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization;
   b. Discrimination against a public employee because he or she has given testimony or instituted proceedings under this act; and
   c. By refusing to bargain collectively with the representatives of its public employees.

1048.    Moreover, Defendant, AFSCME Local 2920 has also violated MCL 423.210(2), by engaging in the following acts:

   d. By Restraining or coercing public employees in the exercise of the rights, such as the ability to collectively bargain, and the ability to file and investigate grievances regarding Defendant GLWA's discriminatory employment practices;

e. By causing, or attempting to cause a Defendant GLWA, a public employer to discriminate against Plaintiff, a public employee in violation of subsection MCL 423.210(1)(c); and

f. By refusing to engage in bargaining collectively with Defendant/Public employer, GLWA.

1049. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT LXXXIII – VIOLATION OF THE NATIONAL LABOR RELATIONS ACT (29 USC 151 ET. SEQ.) – ASSERTED BY PLAINTIFF KIMBERLEY GARZA AGAINST GLWA AND AFSCME LOCAL 2920

1050. Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1051. Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

1052. Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

1053. Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of the National Labor Relations Act ("NLRA") that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

1054. Specifically, Defendants had a duty to meet and bargain in good faith. See 29 USC 158(a)(5), (d).

1055.     The rule of good-faith bargaining has two requirements: (1) that the parties physically appear at bargaining sessions and (2) that they approach negotiations with an eye toward reaching an agreement.

1056.     Further, NLRA §§8(a)(5) and 8(d) impose a duty on employers and unions to bargain over mandatory subjects, such as "wages, hours and other terms and conditions of employment." 29 USC 158(a)(5), (d).

1057.     Moreover, examples of mandatory subjects include wages, health and retirement benefits, hours, and in-plant food prices, *Ford Motor Co v NLRB*, 441 US 488 (1979).

1058.     Here, Defendants GLWA and AFSCME LOCAL 2920 failed or otherwise refused to meet, confer, and collectively bargain in good faith regarding mandatory subjects of Plaintiffs' Employment, such as their wages, shift premiums, hourly schedules, and retirement benefits.

1059.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT LXXXIV – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF MARCUS WISEMAN AGAINST GLWA

1060.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1061.     Plaintiff's race was a factor that made an impact on Defendant's decision to subject him to the wrongful and discriminatory treatment as outlined throughout this Complaint.

1062.    Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

1063.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1064.    If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

1065.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

**COUNT LXXXV– RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF MARCUS WISEMAN AGAINST GLWA**

1066.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1067.    During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

1068.    Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

1069.    Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

a. Failing to provide a work environment free from racial discrimination;

b. Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

c. Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

1070.    Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

1071.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1072.    If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

1073.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment

## COUNT LXXXVI – VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED BY PLAINTIFF MARCUS WISEMAN AGAINST GLWA

1074.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1075.    Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

1076.    Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

1077.    Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

1078.    Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

1079.    In addition to any relief under 42 USC 1981a,  plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

### COUNT LXXXVII – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF JAY LEWIS AGAINST GLWA

1080.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1081.    Plaintiff's race was a factor that made an impact on Defendant's decision to subject him to the wrongful and discriminatory treatment as outlined throughout this Complaint.

1082.    Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

1083.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1084.    If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

1085.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

### COUNT LXXXVIII – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF JAY LEWIS AGAINST GLWA

1086.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1087.    During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

1088.    Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

1089.     Defendants, by and through their agents, servants, and employees, violated the

Elliot-Larsen Civil Rights Act by the following acts:

   a.  Failing to provide a work environment free from racial discrimination;

   b.  Limiting, segregating, or classifying Plaintiff in a way in which deprived,

       or tended to deprive Plaintiff of an employment opportunity or otherwise

       adversely affecting the status of Plaintiff; and

   c.  Demoting, constructively discharging or otherwise discriminating against

       Plaintiff with respect to his employment, compensation, or a term,

       condition, or privilege of employment.

1090.     Defendant, by and through its agents, representatives, and employees, were

predisposed to discriminate on the basis of race and acted in accordance with that

predisposition.

1091.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights

and sensibilities.

1092.     If Plaintiff had been a race other than African American, he would not have been

treated in the manner described.

1093.     As a direct and proximate result of Defendant's wrongful acts and omissions,

Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has

suffered mental anguish, physical and emotional distress, humiliation, and embarrassment

**COUNT LXXXIX – VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED
BY PLAINTIFF JAY LEWIS AGAINST GLWA**

1094. Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1095. Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

1096. Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

1097. Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

1098. Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

1099. In addition to any relief under 42 USC 1981a, plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

**COUNT XC – VIOLATION OF THE PUBLIC EMPLOYEE RELATIONS ACT (MCL 423.201 ET. SEQ.) – ASSERTED BY PLAINTIFF JAY LEWIS AGAINST GLWA AND AFSCME LOCAL 2920**

1100.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full

herein.

1101.     Plaintiff, by definition, is a public employee within the definition of MCL 423.201

et. seq.

1102.     Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon

transfer from DWSD to Defendant, GLWA.

1103.     Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts

and/or omissions in violation of Michigan's Public Employee Relations Act that have

severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

1104.     Defendant GLWA has violated provisions of MCL 423.210(1), specifically by

engaging in the following acts:

a. Discrimination in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization;

b. Discrimination against a public employee because he or she has given testimony or instituted proceedings under this act; and

c. By refusing to bargain collectively with the representatives of its public employees.

1105.     Moreover, Defendant, AFSCME Local 2920 has also violated MCL 423.210(2), by

engaging in the following acts:

a. By Restraining or coercing public employees in the exercise of the rights, such as the ability to collectively bargain, and the ability to file and investigate grievances regarding Defendant GLWA's discriminatory employment practices;

b. By causing, or attempting to cause a Defendant GLWA, a public employer to discriminate against Plaintiff, a public employee in violation of subsection MCL 423.210(1)(c); and

c. By refusing to engage in bargaining collectively with Defendant/Public employer, GLWA.

1106.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT XCI – VIOLATION OF THE NATIONAL LABOR RELATIONS ACT (29 USC 151 ET. SEQ.) – ASSERTED BY PLAINTIFF JAY LEWIS AGAINST GLWA AND AFSCME LOCAL 2920

1107.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1108.    Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

1109.    Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

1110.    Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of the National Labor Relations Act ("NLRA") that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

1111.    Specifically, Defendants had a duty to meet and bargain in good faith. See 29 USC 158(a)(5), (d).

1112.    The rule of good-faith bargaining has two requirements: (1) that the parties physically appear at bargaining sessions and (2) that they approach negotiations with an eye toward reaching an agreement.

1113.    Further, NLRA §§8(a)(5) and 8(d) impose a duty on employers and unions to bargain over mandatory subjects, such as "wages, hours and other terms and conditions of employment." 29 USC 158(a)(5), (d).

1114.    Moreover, examples of mandatory subjects include wages, health and retirement benefits, hours, and in-plant food prices, *Ford Motor Co v NLRB*, 441 US 488 (1979).

1115.    Here, Defendants GLWA and AFSCME LOCAL 2920 failed or otherwise refused to meet, confer, and collectively bargain in good faith regarding mandatory subjects of Plaintiffs' Employment, such as their wages, shift premiums, hourly schedules, and retirement benefits.

1116.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

### COUNT XCII – AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (29 USC 621 ET. SEQ.) – ASSERTED BY PLAINTIFF JAY LEWIS AGAINST GLWA

1117.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1118.    During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of age.

1119.    Plaintiff was subjected to age discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Age Discrimination in Employment Act of 1967.

1120.    Defendants, by and through their agents, servants, and employees, violated the Age Discrimination in Employment Act of 1967 by the following acts:

   a.  Failing to provide a work environment free from discrimination on the basis of age;

   b.  Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

   c.  Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

1121.    Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

1122.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1123.    If Plaintiff had been younger, he would not have been treated in the manner described.

1124.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

**COUNT XCIII – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF TIMOTHY ALLEN AGAINST GLWA**

1125.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1126.    Plaintiff's race was a factor that made an impact on Defendant's decision to subject him to the wrongful and discriminatory treatment as outlined throughout this Complaint.

1127.    Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

1128.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1129.    If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

1130.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

**COUNT XCIV – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF TIMOTHY ALLEN AGAINST GLWA**

1131.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1132.    During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

1133.     Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

1134.     Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

    a.  Failing to provide a work environment free from racial discrimination;

    b.  Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

    c.  Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

1135.     Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

1136.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1137.     If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

1138.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

**COUNT XCV – VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED BY PLAINTIFF TIMOTHY ALLEN AGAINST GLWA**

1139.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1140.    Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

1141.    Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

1142.    Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

1143.    Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

1144.    In addition to any relief under 42 USC 1981a, plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

### COUNT XCVI – AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (29 USC 621 ET. SEQ.) – ASSERTED BY PLAINTIFF TIMOTHY ALLEN AGAINST GLWA

1145.   Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1146.   During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of age.

1147.   Plaintiff was subjected to age discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Age Discrimination in Employment Act of 1967.

1148.   Defendants, by and through their agents, servants, and employees, violated the Age Discrimination in Employment Act of 1967 by the following acts:

   a.   Failing to provide a work environment free from discrimination on the basis of age;

   b.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

   c.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

1149.   Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

1150.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1151.     If Plaintiff had been younger, he would not have been treated in the manner described.

1152.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT XCVII – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF TANYA GLOVER AGAINST GLWA

1153.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1154.     Plaintiff's race was a factor that made an impact on Defendant's decision to subject her to the wrongful and discriminatory treatment as outlined throughout this Complaint.

1155.     Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

1156.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1157.     If Plaintiff had been a race other than African American, she would not have been treated in the manner described.

1158.  As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

### COUNT XCVIII – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF TANYA GLOVER AGAINST GLWA

1159.  Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1160.  During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

1161.  Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

1162.  Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

   a.  Failing to provide a work environment free from racial discrimination;

   b.  Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

   c.  Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition, or privilege of employment.

1163.    Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

1164.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1165.    If Plaintiff had been a race other than African American, she would not have been treated in the manner described.

1166.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment

## COUNT XCIX – RETALIATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF TANYA GLOVER AGAINST GLWA

1167.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1168.    Defendant retaliated against Plaintiff for having complained about Defendant's discriminatory employment practices described above, in violation of Title VII, including, but not limited to:

    a.   Failing to provide a work environment free from racial discrimination;

    b.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

c. Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition, or privilege of employment.

1169.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1170.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

### COUNT C – RETALIATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF TANYA GLOVER AGAINST GLWA

1171.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1172.    Defendant retaliated against Plaintiff for having complained about Defendant's discriminatory employment practices as described throughout this Complaint, in violation of the Elliot-Larsen Civil Rights Act, including, but not limited to:

a. Limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

b. Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition or privilege of employment;

1173.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1174.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

### COUNT CI – AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (29 USC 621 ET. SEQ.) – ASSERTED BY PLAINTIFF TANYA GLOVER AGAINST GLWA

1175.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1176.    During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of age.

1177.    Plaintiff was subjected to age discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Age Discrimination in Employment Act of 1967.

1178.    Defendants, by and through their agents, servants, and employees, violated the Age Discrimination in Employment Act of 1967 by the following acts:

a.    Failing to provide a work environment free from discrimination on the basis of age;

b.    Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

c. Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition, or privilege of employment.

1179. Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

1180. Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1181. If Plaintiff had been younger, she would not have been treated in the manner described.

1182. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT CII – PAY DISCRIMINATION BASED ON GENDER PURSUANT TO THE EQUAL PAY ACT (29 USC 206 ET. SEQ.) – ASSERTED BY PLAINTIFF TANYA GLOVER AGAINST GLWA

1183. Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1184. Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Equal Pay Act.

1185. Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white

men to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

1186.     Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white male employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

1187.     Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Equal Pay Act.

**C**OUNT **CIII** – **P**AY **D**ISCRIMINATION **B**ASED ON **R**ACE **I**N **V**IOLATION OF THE **L**ILLY **L**EDBETTER **F**AIR **P**AY **A**CT OF **2009** – **A**SSERTED BY **P**LAINTIFF **T**ANYA **G**LOVER **A**GAINST **GLWA**

1188.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1189.     Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

1190.     Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

1191.     Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

1192.    Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

1193.    In addition to any relief under 42 USC 1981a, plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

### COUNT CIV – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF JOE KIMBROUGH AGAINST GLWA

1194.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1195.    Plaintiff's race was a factor that made an impact on Defendant's decision to subject him to the wrongful and discriminatory treatment as outlined throughout this Complaint.

1196.    Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

1197.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1198.    If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

1199.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

**COUNT CV – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF JOE KIMBROUGH AGAINST GLWA**

1200.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1201.     During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

1202.     Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

1203.     Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

   d.   Failing to provide a work environment free from racial discrimination;

   e.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

   f.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

1204.     Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

1205.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1206.     If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

1207.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment

## COUNT CVI – VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED BY PLAINTIFF JOE KIMBROUGH AGAINST GLWA

1208.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1209.     Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

1210.     Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

1211.     Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

1212.     Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

1213.     In addition to any relief under 42 USC 1981a,  plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

## COUNT CVII – VIOLATION OF THE PUBLIC EMPLOYEE RELATIONS ACT (MCL 423.201 ET. SEQ.) – ASSERTED BY PLAINTIFF JOE KIMBROUGH AGAINST GLWA AND AFSCME LOCAL 2920

1214.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1215.     Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

1216.     Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

1217. Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of Michigan's Public Employee Relations Act that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

1218. Defendant GLWA has violated provisions of MCL 423.210(1), specifically by engaging in the following acts:

    a. Discrimination in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization;

    b. Discrimination against a public employee because he or she has given testimony or instituted proceedings under this act; and

    c. By refusing to bargain collectively with the representatives of its public employees.

1219. Moreover, Defendant, AFSCME Local 2920 has also violated MCL 423.210(2), by engaging in the following acts:

    d. By Restraining or coercing public employees in the exercise of the rights, such as the ability to collectively bargain, and the ability to file and investigate grievances regarding Defendant GLWA's discriminatory employment practices;

    e. By causing, or attempting to cause a Defendant GLWA, a public employer to discriminate against Plaintiff, a public employee in violation of subsection MCL 423.210(1)(c); and

    f. By refusing to engage in bargaining collectively with Defendant/Public employer, GLWA.

1220. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT CVIII – VIOLATION OF THE NATIONAL LABOR RELATIONS ACT (29 USC 151 ET. SEQ.) – ASSERTED BY PLAINTIFF JOE KIMBROUGH AGAINST GLWA AND AFSCME LOCAL 2920

1221.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1222.    Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

1223.    Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

1224.    Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of the National Labor Relations Act ("NLRA") that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

1225.    Specifically, Defendants had a duty to meet and bargain in good faith.  See 29 USC 158(a)(5), (d).

1226.    The rule of good-faith bargaining has two requirements: (1) that the parties physically appear at bargaining sessions and (2) that they approach negotiations with an eye toward reaching an agreement.

1227.    Further, NLRA §§8(a)(5) and 8(d) impose a duty on employers and unions to bargain over mandatory subjects, such as "wages, hours and other terms and conditions of employment." 29 USC 158(a)(5), (d).

1228.    Moreover, examples of mandatory subjects include wages, health and retirement benefits, hours, and in-plant food prices, *Ford Motor Co v NLRB*, 441 US 488 (1979).

1229.    Here, Defendants GLWA and AFSCME LOCAL 2920 failed or otherwise refused to meet, confer, and collectively bargain in good faith regarding mandatory subjects of

Plaintiffs' Employment, such as their wages, shift premiums, hourly schedules, and retirement benefits.

1230.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

### COUNT CIX – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF JAMES DYSON AGAINST GLWA

1231.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1232.     Plaintiff's race was a factor that made an impact on Defendant's decision to subject him to the wrongful and discriminatory treatment as outlined throughout this Complaint.

1233.     Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

1234.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1235.     If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

1236.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

### COUNT CX – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF JAMES DYSON AGAINST GLWA

1237.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1238.    During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

1239.    Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

1240.    Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

   a.   Failing to provide a work environment free from racial discrimination;

   b.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

   c.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

1241.    Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

1242.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1243.    If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

1244.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment

## COUNT CXI – VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED BY PLAINTIFF JAMES DYSON AGAINST GLWA

1245.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1246.    Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

1247.    Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

1248.    Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

1249.     Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

1250.     In addition to any relief under 42 USC 1981a,  plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

## COUNT CXII – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF PATTI TURNER AGAINST GLWA

1251.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1252.     Plaintiff's race was a factor that made an impact on Defendant's decision to subject her to the wrongful and discriminatory treatment as outlined throughout this Complaint.

1253.     Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

1254.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1255.     If Plaintiff had been a race other than African American, she would not have been treated in the manner described.

1256.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

**COUNT CXIII – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF PATTI TURNER AGAINST GLWA**

1257.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1258.    During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

1259.    Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

1260.    Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

g.   Failing to provide a work environment free from racial discrimination;

h.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

i.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition, or privilege of employment.

1261.    Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

1262.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1263.    If Plaintiff had been a race other than African American, she would not have been treated in the manner described.

1264.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment

## COUNT CXIV – VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED BY PLAINTIFF PATTI TURNER AGAINST GLWA

1265.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1266.    Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

1267.    Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

1268.    Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages,

benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

1269.     Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

1270.     In addition to any relief under 42 USC 1981a,  plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

**COUNT CXV – PAY DISCRIMINATION BASED ON GENDER PURSUANT TO THE EQUAL PAY ACT (29 USC 206 ET. SEQ.) – ASSERTED BY PLAINTIFF PATTI TURNER AGAINST GLWA**

1271.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1272.     Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Equal Pay Act.

1273.     Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

1274.     Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages,

benefits, or other compensation was paid to similarly situated white male employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

1275. Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Equal Pay Act.

## COUNT CXVI – AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (29 USC 621 ET. SEQ.) – ASSERTED BY PLAINTIFF PATTI TURNER AGAINST GLWA

1276. Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1277. During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of age.

1278. Plaintiff was subjected to age discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Age Discrimination in Employment Act of 1967.

1279. Defendants, by and through their agents, servants, and employees, violated the Age Discrimination in Employment Act of 1967 by the following acts:

    a. Failing to provide a work environment free from discrimination on the basis of age;

    b. Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

    c.    Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition, or privilege of employment.

1280.    Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

1281.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1282.    If Plaintiff had been younger, she would not have been treated in the manner described.

1283.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT CXVII – VIOLATION OF THE PUBLIC EMPLOYEE RELATIONS ACT (MCL 423.201 ET. SEQ.) – ASSERTED BY PLAINTIFF PATTI TURNER AGAINST AFSCME LOCAL 2920

1284.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1285.    Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

1286.    Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

1287.    Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of Michigan's Public Employee Relations Act that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

1288.    Defendant GLWA has violated provisions of MCL 423.210(1), specifically by engaging in the following acts:

   a. Discrimination in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization;
   b. Discrimination against a public employee because he or she has given testimony or instituted proceedings under this act; and
   c. By refusing to bargain collectively with the representatives of its public employees.

1289.    Moreover, Defendant, AFSCME Local 2920 has also violated MCL 423.210(2), by engaging in the following acts:

   a. By Restraining or coercing public employees in the exercise of the rights, such as the ability to collectively bargain, and the ability to file and investigate grievances regarding Defendant GLWA's discriminatory employment practices;
   b. By causing, or attempting to cause a Defendant GLWA, a public employer to discriminate against Plaintiff, a public employee in violation of subsection MCL 423.210(1)(c); and
   c. By refusing to engage in bargaining collectively with Defendant/Public employer, GLWA.

1290.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

**COUNT CXVIII – VIOLATION OF THE NATIONAL LABOR RELATIONS ACT (29 USC 151 ET. SEQ.) – ASSERTED BY PLAINTIFF PATTI TURNER AGAINST GLWA AND AFSCME LOCAL 2920**

1291.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1292.    Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

1293.    Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

1294.    Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of the National Labor Relations Act ("NLRA") that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

1295.    Specifically, Defendants had a duty to meet and bargain in good faith.  See 29 USC 158(a)(5), (d).

1296.    The rule of good-faith bargaining has two requirements: (1) that the parties physically appear at bargaining sessions and (2) that they approach negotiations with an eye toward reaching an agreement.

1297.    Further, NLRA §§8(a)(5) and 8(d) impose a duty on employers and unions to bargain over mandatory subjects, such as "wages, hours and other terms and conditions of employment." 29 USC 158(a)(5), (d).

1298.    Moreover, examples of mandatory subjects include wages, health and retirement benefits, hours, and in-plant food prices, *Ford Motor Co v NLRB*, 441 US 488 (1979).

1299.    Here, Defendants GLWA and AFSCME LOCAL 2920 failed or otherwise refused to meet, confer, and collectively bargain in good faith regarding mandatory subjects of

Plaintiffs' Employment, such as their wages, shift premiums, hourly schedules, and retirement benefits.

1300.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT CXIX – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF TONYA TUCKER AGAINST GLWA

1301.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1302.     Plaintiff's race was a factor that made an impact on Defendant's decision to subject her to the wrongful and discriminatory treatment as outlined throughout this Complaint.

1303.     Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

1304.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1305.     If Plaintiff had been a race other than African American, she would not have been treated in the manner described.

1306.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

**COUNT CXXI – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF TONYA TUCKER AGAINST GLWA**

1307.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1308.     During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

1309.     Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

1310.     Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

a.  Failing to provide a work environment free from racial discrimination;

b.  Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

c.  Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition, or privilege of employment.

1311.    Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

1312.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1313.    If Plaintiff had been a race other than African American, she would not have been treated in the manner described.

1314.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment

## COUNT CXXI – VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED BY PLAINTIFF TONYA TUCKER AGAINST GLWA

1315.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1316.    Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

1317.    Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

1318.    Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages,

benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

1319.    Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

1320.    In addition to any relief under 42 USC 1981a, plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

## COUNT CXXII – PAY DISCRIMINATION BASED ON GENDER PURSUANT TO THE EQUAL PAY ACT (29 USC 206 ET. SEQ.) – ASSERTED BY PLAINTIFF TONYA TUCKER AGAINST GLWA

1321.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1322.    Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Equal Pay Act.

1323.    Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

1324.    Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages,

benefits, or other compensation was paid to similarly situated white male employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

1325.    Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Equal Pay Act.

**COUNT CXXIII – AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (29 USC 621 ET. SEQ.) – ASSERTED BY PLAINTIFF TONYA TUCKER AGAINST GLWA**

1326.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1327.    During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of age.

1328.    Plaintiff was subjected to age discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Age Discrimination in Employment Act of 1967.

1329.    Defendants, by and through their agents, servants, and employees, violated the Age Discrimination in Employment Act of 1967 by the following acts:

   a.  Failing to provide a work environment free from discrimination on the basis of age;

   b.  Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

   c.  Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition, or privilege of employment.

1330.    Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

1331.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1332.    If Plaintiff had been younger, she would not have been treated in the manner described.

1333.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT CXXIV – VIOLATION OF THE PUBLIC EMPLOYEE RELATIONS ACT (MCL 423.201 ET. SEQ.) – ASSERTED BY PLAINTIFF TONYA TUCKER AGAINST AFSCME LOCAL 2920

1334.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1335.    Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

1336.    Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

1337.    Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of Michigan's Public Employee Relations Act that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

1338.     Defendant GLWA has violated provisions of MCL 423.210(1), specifically by engaging in the following acts:

   a.  Discrimination in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization;
   b.  Discrimination against a public employee because he or she has given testimony or instituted proceedings under this act; and
   c.  By refusing to bargain collectively with the representatives of its public employees.

1339.     Moreover, Defendant, AFSCME Local 2920 has also violated MCL 423.210(2), by engaging in the following acts:

   a.  By Restraining or coercing public employees in the exercise of the rights, such as the ability to collectively bargain, and the ability to file and investigate grievances regarding Defendant GLWA's discriminatory employment practices;
   b.  By causing, or attempting to cause a Defendant GLWA, a public employer to discriminate against Plaintiff, a public employee in violation of subsection MCL 423.210(1)(c); and
   c.  By refusing to engage in bargaining collectively with Defendant/Public employer, GLWA.

1340.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

**COUNT CXXV – VIOLATION OF THE NATIONAL LABOR RELATIONS ACT (29 USC 151 ET. SEQ.) – ASSERTED BY PLAINTIFF TONYA TUCKER AGAINST GLWA AND AFSCME LOCAL 2920**

1341.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1342.     Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

1343.    Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

1344.    Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of the National Labor Relations Act ("NLRA") that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

1345.    Specifically, Defendants had a duty to meet and bargain in good faith.  See 29 USC 158(a)(5), (d).

1346.    The rule of good-faith bargaining has two requirements: (1) that the parties physically appear at bargaining sessions and (2) that they approach negotiations with an eye toward reaching an agreement.

1347.    Further, NLRA §§8(a)(5) and 8(d) impose a duty on employers and unions to bargain over mandatory subjects, such as "wages, hours and other terms and conditions of employment." 29 USC 158(a)(5), (d).

1348.    Moreover, examples of mandatory subjects include wages, health and retirement benefits, hours, and in-plant food prices, *Ford Motor Co v NLRB*, 441 US 488 (1979).

1349.    Here, Defendants GLWA and AFSCME LOCAL 2920 failed or otherwise refused to meet, confer, and collectively bargain in good faith regarding mandatory subjects of Plaintiffs' Employment, such as their wages, shift premiums, hourly schedules, and retirement benefits.

1350.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a

direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT CXXVI – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF TENEIA CLEMENT AGAINST GLWA

1351.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1352.    Plaintiff's race was a factor that made an impact on Defendant's decision to subject her to the wrongful and discriminatory treatment as outlined throughout this Complaint.

1353.    Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

1354.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1355.    If Plaintiff had been a race other than African American, she would not have been treated in the manner described.

1356.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT CXXVII – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF TENEIA CLEMENT AGAINST GLWA

1357.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1358.     During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

1359.     Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

1360.     Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

    d.  Failing to provide a work environment free from racial discrimination;

    e.  Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

    f.  Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition, or privilege of employment.

1361.     Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

1362.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1363.     If Plaintiff had been a race other than African American, she would not have been treated in the manner described.

1364.    As a direct and proximate result of Defendant's wrongful acts and omissions,

Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has

suffered mental anguish, physical and emotional distress, humiliation, and embarrassment

### COUNT CXXVIII – VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED BY PLAINTIFF TENEIA CLEMENT AGAINST GLWA

1365.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full

herein.

1366.    Plaintiff is an Employee, and Defendant is an employer, within the statutory

meaning of the Lilly Ledbetter Fair Pay Act of 2009.

1367.    Defendant, GLWA, by engaging in a discriminatory compensation decision and

hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or,

hiring practice by way of unfairly and disproportionately, allowing similarly situated white

men and women to negotiate higher pay rates and job titles, with the same or less

experience as that of Plaintiff.

1368.    Plaintiff is a person affected by GLWA's application of a discriminatory

compensation decision and/or hiring practice, including each and every time wages,

benefits, or other compensation was paid to similarly situated white employees, resulting

in whole or in part from GLWA's pay scale and hiring practice decisions.

1369.    Defendant GLWA's discriminatory compensation decision and hiring practice

amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay

Act of 2009. 42 USC 2000e-5(e)(3)(A).

1370.    In addition to any relief under 42 USC 1981a, plaintiff is entitled to recover back

pay for up to two years preceding the filing of the charge, where the unlawful employment

practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

### COUNT CXXIX – PAY DISCRIMINATION BASED ON GENDER PURSUANT TO THE EQUAL PAY ACT (29 USC 206 ET. SEQ.) – ASSERTED BY PLAINTIFF TENEIA CLEMENT AGAINST GLWA

1371.   Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1372.   Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Equal Pay Act.

1373.   Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

1374.   Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white male employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

1375.   Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Equal Pay Act.

### COUNT CXXX– AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (29 USC 621 ET. SEQ.) – ASSERTED BY PLAINTIFF TENEIA CLEMENT AGAINST GLWA

1376.   Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1377.     During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of age.

1378.     Plaintiff was subjected to age discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Age Discrimination in Employment Act of 1967.

1379.     Defendants, by and through their agents, servants, and employees, violated the Age Discrimination in Employment Act of 1967 by the following acts:

    a. Failing to provide a work environment free from discrimination on the basis of age;

    b. Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

    c. Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition, or privilege of employment.

1380.     Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

1381.     Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1382.     If Plaintiff had been younger, she would not have been treated in the manner described.

1383.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

### COUNT CXXXI – VIOLATION OF THE PUBLIC EMPLOYEE RELATIONS ACT (MCL 423.201 ET. SEQ.) – ASSERTED BY PLAINTIFF TENEIA CLEMENT AGAINST AFSCME LOCAL 2920

1384.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1385.     Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

1386.     Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

1387.     Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of Michigan's Public Employee Relations Act that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

1388.     Defendant GLWA has violated provisions of MCL 423.210(1), specifically by engaging in the following acts:

   a. Discrimination in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization;
   b. Discrimination against a public employee because he or she has given testimony or instituted proceedings under this act; and
   c. By refusing to bargain collectively with the representatives of its public employees.

1389.     Moreover, Defendant, AFSCME Local 2920 has also violated MCL 423.210(2), by engaging in the following acts:

a. By Restraining or coercing public employees in the exercise of the rights, such as the ability to collectively bargain, and the ability to file and investigate grievances regarding Defendant GLWA's discriminatory employment practices;

b. By causing, or attempting to cause a Defendant GLWA, a public employer to discriminate against Plaintiff, a public employee in violation of subsection MCL 423.210(1)(c); and

c. By refusing to engage in bargaining collectively with Defendant/Public employer, GLWA.

1390. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT CXXXII – VIOLATION OF THE NATIONAL LABOR RELATIONS ACT (29 USC 151 ET. SEQ.) – ASSERTED BY PLAINTIFF TENEIA CLEMENT AGAINST GLWA AND AFSCME LOCAL 2920

1391. Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1392. Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

1393. Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

1394. Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of the National Labor Relations Act ("NLRA") that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

1395. Specifically, Defendants had a duty to meet and bargain in good faith. See 29 USC 158(a)(5), (d).

1396.   The rule of good-faith bargaining has two requirements: (1) that the parties physically appear at bargaining sessions and (2) that they approach negotiations with an eye toward reaching an agreement.

1397.   Further, NLRA §§8(a)(5) and 8(d) impose a duty on employers and unions to bargain over mandatory subjects, such as "wages, hours and other terms and conditions of employment." 29 USC 158(a)(5), (d).

1398.   Moreover, examples of mandatory subjects include wages, health and retirement benefits, hours, and in-plant food prices, *Ford Motor Co v NLRB*, 441 US 488 (1979).

1399.   Here, Defendants GLWA and AFSCME LOCAL 2920 failed or otherwise refused to meet, confer, and collectively bargain in good faith regarding mandatory subjects of Plaintiffs' Employment, such as their wages, shift premiums, hourly schedules, and retirement benefits.

1400.   As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

### COUNT CXXXIII – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF ALFRED TEASLEY AGAINST GLWA

1401.   Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1402.   Plaintiff's race was a factor that made an impact on Defendant's decision to subject him to the wrongful and discriminatory treatment as outlined throughout this Complaint.

1403.    Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

1404.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1405.    If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

1406.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

### COUNT CXXXIV – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF ALFRED TEASLEY AGAINST GLWA

1407.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1408.    During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

1409.    Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

1410.    Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

d.  Failing to provide a work environment free from racial discrimination;

e.  Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

f.  Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

1411.  Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

1412.  Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1413.  If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

1414.  As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT CXXXV – VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED BY PLAINTIFF ALFRED TEASLEY AGAINST GLWA

1415.  Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1416.     Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

1417.     Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

1418.     Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

1419.     Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

1420.     In addition to any relief under 42 USC 1981a,  plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

## COUNT CXXXVI – VIOLATION OF THE PUBLIC EMPLOYEE RELATIONS ACT (MCL 423.201 ET. SEQ.) – ASSERTED BY PLAINTIFF ALFRED TEASLEY AGAINST AFSCME LOCAL 2920

1421.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1422.     Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

1423.     Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

1424.     Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of Michigan's Public Employee Relations Act that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

1425.     Defendant GLWA has violated provisions of MCL 423.210(1), specifically by engaging in the following acts:

   a. Discrimination in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization;
   b. Discrimination against a public employee because he or she has given testimony or instituted proceedings under this act; and
   c. By refusing to bargain collectively with the representatives of its public employees.

1426.     Moreover, Defendant, AFSCME Local 2920 has also violated MCL 423.210(2), by engaging in the following acts:

   a. By Restraining or coercing public employees in the exercise of the rights, such as the ability to collectively bargain, and the ability to file and investigate grievances regarding Defendant GLWA's discriminatory employment practices;
   b. By causing, or attempting to cause a Defendant GLWA, a public employer to discriminate against Plaintiff, a public employee in violation of subsection MCL 423.210(1)(c); and
   c. By refusing to engage in bargaining collectively with Defendant/Public employer, GLWA.

1427.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a

direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

### COUNT CXXXVII – VIOLATION OF THE NATIONAL LABOR RELATIONS ACT (29 USC 151 ET. SEQ.) – ASSERTED BY PLAINTIFF ALFRED TEASLEY AGAINST GLWA AND AFSCME LOCAL 2920

1428.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1429.    Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

1430.    Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

1431.    Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of the National Labor Relations Act ("NLRA") that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

1432.    Specifically, Defendants had a duty to meet and bargain in good faith.  See 29 USC 158(a)(5), (d).

1433.    The rule of good-faith bargaining has two requirements: (1) that the parties physically appear at bargaining sessions and (2) that they approach negotiations with an eye toward reaching an agreement.

1434.    Further, NLRA §§8(a)(5) and 8(d) impose a duty on employers and unions to bargain over mandatory subjects, such as "wages, hours and other terms and conditions of employment." 29 USC 158(a)(5), (d).

1435. Moreover, examples of mandatory subjects include wages, health and retirement benefits, hours, and in-plant food prices, *Ford Motor Co v NLRB*, 441 US 488 (1979).

1436. Here, Defendants GLWA and AFSCME LOCAL 2920 failed or otherwise refused to meet, confer, and collectively bargain in good faith regarding mandatory subjects of Plaintiffs' Employment, such as their wages, shift premiums, hourly schedules, and retirement benefits.

1437. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT CXXXVIII – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF ROGER GREENWOOD AGAINST GLWA

1438. Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1439. Plaintiff's race was a factor that made an impact on Defendant's decision to subject him to the wrongful and discriminatory treatment as outlined throughout this Complaint.

1440. Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

1441. Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1442.     If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

1443.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT CXXXIX – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF ROGER GREENWOOD AGAINST GLWA

1444.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1445.     During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

1446.     Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

1447.     Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

   d.   Failing to provide a work environment free from racial discrimination;

   e.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

     f.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

1448.    Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

1449.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1450.    If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

1451.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment

## COUNT CXL – VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED BY PLAINTIFF ROGER GREENWOOD AGAINST GLWA

1452.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1453.    Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

1454.    Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white

men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

1455.   Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

1456.   Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

1457.   In addition to any relief under 42 USC 1981a,  plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

**COUNT CXLI – VIOLATION OF THE PUBLIC EMPLOYEE RELATIONS ACT (MCL 423.201 ET. SEQ.) – ASSERTED BY PLAINTIFF ROGER GREENWOOD AGAINST GLWA AND AFSCME LOCAL 2920**

1458.   Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1459.   Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

1460.   Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

1461.     Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of Michigan's Public Employee Relations Act that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

1462.     Defendant GLWA has violated provisions of MCL 423.210(1), specifically by engaging in the following acts:

> d.  Discrimination in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization;
> e.  Discrimination against a public employee because he or she has given testimony or instituted proceedings under this act; and
> f.  By refusing to bargain collectively with the representatives of its public employees.

1463.     Moreover, Defendant, AFSCME Local 2920 has also violated MCL 423.210(2), by engaging in the following acts:

> d.  By Restraining or coercing public employees in the exercise of the rights, such as the ability to collectively bargain, and the ability to file and investigate grievances regarding Defendant GLWA's discriminatory employment practices;
> e.  By causing, or attempting to cause a Defendant GLWA, a public employer to discriminate against Plaintiff, a public employee in violation of subsection MCL 423.210(1)(c); and
> f.  By refusing to engage in bargaining collectively with Defendant/Public employer, GLWA.

1464.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

### COUNT CXLII – VIOLATION OF THE NATIONAL LABOR RELATIONS ACT (29 USC 151 ET. SEQ.) – ASSERTED BY PLAINTIFF ROGER GREENWOOD AGAINST GLWA AND AFSCME LOCAL 2920

1465.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1466.    Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

1467.    Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

1468.    Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of the National Labor Relations Act ("NLRA") that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

1469.    Specifically, Defendants had a duty to meet and bargain in good faith.  See 29 USC 158(a)(5), (d).

1470.    The rule of good-faith bargaining has two requirements: (1) that the parties physically appear at bargaining sessions and (2) that they approach negotiations with an eye toward reaching an agreement.

1471.    Further, NLRA §§8(a)(5) and 8(d) impose a duty on employers and unions to bargain over mandatory subjects, such as "wages, hours and other terms and conditions of employment." 29 USC 158(a)(5), (d).

1472.    Moreover, examples of mandatory subjects include wages, health and retirement benefits, hours, and in-plant food prices, *Ford Motor Co v NLRB*, 441 US 488 (1979).

1473.    Here, Defendants GLWA and AFSCME LOCAL 2920 failed or otherwise refused to meet, confer, and collectively bargain in good faith regarding mandatory subjects of

Plaintiffs' Employment, such as their wages, shift premiums, hourly schedules, and retirement benefits.

1474. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT CXLIII – VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED BY PLAINTIFF RAVI YELAMANCHI AGAINST GLWA

1475. Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1476. Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

1477. Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or hiring practice by way of unfairly and disproportionately, allowing similarly situated white men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

1478. Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages, benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

1479.    Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

1480.    In addition to any relief under 42 USC 1981a, plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

### COUNT CXLIV – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF LEMONT BOYD AGAINST GLWA

1481.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1482.    Plaintiff's race was a factor that made an impact on Defendant's decision to subject him to the wrongful and discriminatory treatment as outlined throughout this Complaint.

1483.    Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

1484.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1485.    If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

1486.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

**COUNT CXLV – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF LEMONT BOYD AGAINST GLWA**

1487.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1488.     During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

1489.     Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

1490.     Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

d.   Failing to provide a work environment free from racial discrimination;

e.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

f.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

1491.    Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

1492.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1493.    If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

1494.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT CXLVI – VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 – ASSERTED BY PLAINTIFF LEMONT BOYD AGAINST GLWA

1495.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1496.    Plaintiff is an Employee, and Defendant is an employer, within the statutory meaning of the Lilly Ledbetter Fair Pay Act of 2009.

1497.    Defendant, GLWA, by engaging in a discriminatory compensation decision and hiring practice, subjected Plaintiffs to said discriminatory compensation decision and/or, hiring practice by way of unfairly and disproportionately, allowing similarly situated white men and women to negotiate higher pay rates and job titles, with the same or less experience as that of Plaintiff.

1498.    Plaintiff is a person affected by GLWA's application of a discriminatory compensation decision and/or hiring practice, including each and every time wages,

benefits, or other compensation was paid to similarly situated white employees, resulting in whole or in part from GLWA's pay scale and hiring practice decisions.

1499.    Defendant GLWA's discriminatory compensation decision and hiring practice amounts to unlawful employment practice under the terms of the Lilly Ledbetter Fair Pay Act of 2009. 42 USC 2000e-5(e)(3)(A).

1500.    In addition to any relief under 42 USC 1981a,  plaintiff is entitled to recover back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge-filing period are similar or related to discriminatory employment practices with regard to compensation that occurred outside the time for filing a charge. 42 USC 2000e-5(e)(3)(B).

**COUNT CXLVII – AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (29 USC 621 ET. SEQ.) – ASSERTED BY PLAINTIFF LEMONT BOYD AGAINST GLWA**

1501.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1502.    During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of age.

1503.    Plaintiff was subjected to age discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Age Discrimination in Employment Act of 1967.

1504.    Defendants, by and through their agents, servants, and employees, violated the Age Discrimination in Employment Act of 1967 by the following acts:

    d.    Failing to provide a work environment free from discrimination on the basis of age;

    e.   Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

    f.   Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

1505.    Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

1506.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1507.    If Plaintiff had been younger, he would not have been treated in the manner described.

1508.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT CXLVIII – VIOLATION OF THE PUBLIC EMPLOYEE RELATIONS ACT (MCL 423.201 ET. SEQ.) – ASSERTED BY PLAINTIFF LEMONT BOYD AGAINST GLWA AND AFSCME LOCAL 2920

1509.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1510.    Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

1511.    Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

1512.    Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of Michigan's Public Employee Relations Act that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

1513.    Defendant GLWA has violated provisions of MCL 423.210(1), specifically by engaging in the following acts:

   a.  Discrimination in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization;
   b.  Discrimination against a public employee because he or she has given testimony or instituted proceedings under this act; and
   c.  By refusing to bargain collectively with the representatives of its public employees.

1514.    Moreover, Defendant, AFSCME Local 2920 has also violated MCL 423.210(2), by engaging in the following acts:

   d.  By Restraining or coercing public employees in the exercise of the rights, such as the ability to collectively bargain, and the ability to file and investigate grievances regarding Defendant GLWA's discriminatory employment practices;
   e.  By causing, or attempting to cause a Defendant GLWA, a public employer to discriminate against Plaintiff, a public employee in violation of subsection MCL 423.210(1)(c); and
   f.  By refusing to engage in bargaining collectively with Defendant/Public employer, GLWA.

1515.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

**C**OUNT **CXLIX** – **V**IOLATION OF THE **N**ATIONAL **L**ABOR **R**ELATIONS **A**CT **(29 USC 151 ET. SEQ.)** – **A**SSERTED BY **P**LAINTIFF **L**EMONT **B**OYD **A**GAINST **GLWA** AND **AFSCME L**OCAL **2920**

1516.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1517.    Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

1518.    Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

1519.    Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of the National Labor Relations Act ("NLRA") that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

1520.    Specifically, Defendants had a duty to meet and bargain in good faith.  See 29 USC 158(a)(5), (d).

1521.    The rule of good-faith bargaining has two requirements: (1) that the parties physically appear at bargaining sessions and (2) that they approach negotiations with an eye toward reaching an agreement.

1522.    Further, NLRA §§8(a)(5) and 8(d) impose a duty on employers and unions to bargain over mandatory subjects, such as "wages, hours and other terms and conditions of employment." 29 USC 158(a)(5), (d).

1523.    Moreover, examples of mandatory subjects include wages, health and retirement benefits, hours, and in-plant food prices, *Ford Motor Co v NLRB*, 441 US 488 (1979).

1524.    Here, Defendants GLWA and AFSCME LOCAL 2920 failed or otherwise refused to meet, confer, and collectively bargain in good faith regarding mandatory subjects of Plaintiffs' Employment, such as their wages, shift premiums, hourly schedules, and retirement benefits.

1525.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

### COUNT CL – RACIAL DISCRIMINATION PURSUANT TO TITLE VII (42 USC 2000 ET. SEQ.) – ASSERTED BY PLAINTIFF HAROLD L. ROBINSON, SR. AGAINST GLWA

1526.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1527.    Plaintiff's race was a factor that made an impact on Defendant's decision to subject him to the wrongful and discriminatory treatment as outlined throughout this Complaint.

1528.    Defendant, by its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees who are not African American in the terms and conditions of employment, based on an unlawful consideration of race.

1529.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1530.    If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

1531.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

**COUNT CLI – RACIAL DISCRIMINATION PURSUANT TO THE ELLIOT LARSEN CIVIL RIGHTS ACT (MCL 37.201 ET. SEQ.) – ASSERTED BY PLAINTIFF HAROLD L. ROBINSON, SR. AGAINST GLWA**

1532.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1533.    During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of race.

1534.    Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Elliot-Larsen Civil Rights Act.

1535.    Defendants, by and through their agents, servants, and employees, violated the Elliot-Larsen Civil Rights Act by the following acts:

g.  Failing to provide a work environment free from racial discrimination;

h.  Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

i.  Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

1536.    Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

1537.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1538.    If Plaintiff had been a race other than African American, he would not have been treated in the manner described.

1539.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

### COUNT CLII – AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (29 USC 621 ET. SEQ.) – ASSERTED BY PLAINTIFF HAROLD ROBINSON, SR. AGAINST GLWA

1540.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1541.    During Plaintiff's employment at Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on the unlawful consideration of age.

1542.    Plaintiff was subjected to age discrimination by Defendant, by and through its agents, servants, employees, and contractors, said acts being made unlawful by the Age Discrimination in Employment Act of 1967.

1543.    Defendants, by and through their agents, servants, and employees, violated the Age Discrimination in Employment Act of 1967 by the following acts:

g.  Failing to provide a work environment free from discrimination on the basis of age;

h.  Limiting, segregating, or classifying Plaintiff in a way in which deprived, or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff; and

i.  Demoting, constructively discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition, or privilege of employment.

1544.    Defendant, by and through its agents, representatives, and employees, were predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

1545.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

1546.    If Plaintiff had been younger, he would not have been treated in the manner described.

1547.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT CLIII – VIOLATION OF THE PUBLIC EMPLOYEE RELATIONS ACT (MCL 423.201 ET. SEQ.) – ASSERTED BY PLAINTIFF HAROLD ROBINSON, SR. AGAINST GLWA AND AFSCME LOCAL 2920

1548.    Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1549.     Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

1550.     Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

1551.     Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of Michigan's Public Employee Relations Act that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

1552.     Defendant GLWA has violated provisions of MCL 423.210(1), specifically by engaging in the following acts:

g.  Discrimination in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization;

h.  Discrimination against a public employee because he or she has given testimony or instituted proceedings under this act; and

i.  By refusing to bargain collectively with the representatives of its public employees.

1553.     Moreover, Defendant, AFSCME Local 2920 has also violated MCL 423.210(2), by engaging in the following acts:

j.  By Restraining or coercing public employees in the exercise of the rights, such as the ability to collectively bargain, and the ability to file and investigate grievances regarding Defendant GLWA's discriminatory employment practices;

k.  By causing, or attempting to cause a Defendant GLWA, a public employer to discriminate against Plaintiff, a public employee in violation of subsection MCL 423.210(1)(c); and

l.  By refusing to engage in bargaining collectively with Defendant/Public employer, GLWA.

1554.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a

direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

### COUNT CLIV – VIOLATION OF THE NATIONAL LABOR RELATIONS ACT (29 USC 151 ET. SEQ.) – ASSERTED BY PLAINTIFF HAROLD L. ROBINSON AGAINST GLWA AND AFSCME LOCAL 2920

1555.     Plaintiffs incorporates and realleges all above paragraphs as if set forth in full herein.

1556.     Plaintiff, by definition, is a public employee within the definition of MCL 423.201 et. seq.

1557.     Plaintiff was involuntarily shifted into Defendant, AFSCME Local 2920, upon transfer from DWSD to Defendant, GLWA.

1558.     Both the Defendant-Employer, and the Defendant-Labor Union, engaged in acts and/or omissions in violation of the National Labor Relations Act ("NLRA") that have severely damaged Plaintiffs in terms of their wages, benefits, and retirement.

1559.     Specifically, Defendants had a duty to meet and bargain in good faith.  See 29 USC 158(a)(5), (d).

1560.     The rule of good-faith bargaining has two requirements: (1) that the parties physically appear at bargaining sessions and (2) that they approach negotiations with an eye toward reaching an agreement.

1561.     Further, NLRA §§8(a)(5) and 8(d) impose a duty on employers and unions to bargain over mandatory subjects, such as "wages, hours and other terms and conditions of employment." 29 USC 158(a)(5), (d).

1562.     Moreover, examples of mandatory subjects include wages, health and retirement benefits, hours, and in-plant food prices, *Ford Motor Co v NLRB*, 441 US 488 (1979).

1563.     Here, Defendants GLWA and AFSCME LOCAL 2920 failed or otherwise refused to meet, confer, and collectively bargain in good faith regarding mandatory subjects of Plaintiffs' Employment, such as their wages, shift premiums, hourly schedules, and retirement benefits.

1564.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, such as Paid Time Off, Shift Premiums, and likewise, further, Plaintiff has lost retirement benefits as a direct result of Defendants' Acts and Omissions, further, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

## COUNT CLV – VIOLATION OF THE ADA – ASSERTED BY AURELIA MORGAN AGAINST GLWA

1565.     Plaintiff incorporates and realleges all above paragraphs as if set forth in full herein.

1566.     Defendant, GLWA, is an employer under the statutory definition provided by the ADA.

1567.     Plaintiff, Aurelia Morgan, has a physical disability that affects major life activities of Plaintiff, such as performing indoor tasks in the presence of heat and asbestos exposure.

1568.     Based on the foregoing facts outlined above, Plaintiff Aurelia Morgan was capable of finding and performing alternative work that did not involve the tasks affected by her disability.

1569.     Plaintiff is qualified for the position, as she is an individual who can perform the essential functions of her job as an employee at Defendant's Wastewater Treatment Plant.

1570.    The ADA makes it unlawful to discriminate against a qualified individual in the terms and conditions of employment on the basis of disability. 42 USC 12112(a).

1571.    By rejecting Plaintiff's well-documented medical condition, and by forcing Plaintiff to carry out a job in which was expressly against her numerous Doctor's restrictions, Defendant discriminated against Plaintiff because of her disability.

1572.    Plaintiff made her need for an accommodation known, and Defendant's employees and agents refused to cooperate with Plaintiff in giving her a job function that worked within the confines of her medical restriction.

1573.    Defendant conducted itself with malice or with reckless indifference to Plaintiff's federally protected rights.

1574.    As a direct and proximate result of Defendant's discrimination on the basis of disability, Plaintiff has suffered lost wages, benefits, and loss of employment opportunities. In addition, Defendant's failure to make reasonable accommodation to Plaintiff has caused or continues to cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

## COUNT CLVI – VIOLATION OF THE PDCRA – ASSERTED BY AURELIA MORGAN AGAINST GLWA

1575.    Plaintiff incorporates and realleges all above paragraphs as if set forth in full herein.

1576.    At all material times, Plaintiff was employed by Defendant.

1577.    Plaintiff's asthma constitutes a disability, as that term is defined by and within the meaning of the PDCRA, MCL 37.1103(d).

1578.    Based on the foregoing facts outlined above, Plaintiff Aurelia Morgan was capable of finding and performing alternative work that did not involve the tasks affected by her disability.

1579.    Plaintiff is qualified for the position, as she is an individual who can perform the essential functions of her job as an employee at Defendant's Wastewater Treatment Plant

1580.    By forcing Plaintiff to carry out a job in which was expressly against her numerous Doctor's restrictions, Defendant discriminated against Plaintiff because of her disability.

1581.    Plaintiff made her need for an accommodation known, and Defendant's employees and agents refused to cooperate with Plaintiff in giving her a job function that worked within the confines of her medical restriction.

1582.    The actions of Defendant and its agents, representatives, and employees were intentional in their disregard for the rights and sensibilities of Plaintiff.

1583.    As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has sustained injuries and damages, including the loss of earnings and earning capacity; loss of fringe and pension benefits; mental and emotional distress; humiliation and embarrassment; loss of career opportunities; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue a gainful occupation of choice.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs each respectfully requests that this Honorable Court grant a Judgment in favor of Plaintiff and against Defendants, GREAT LAKES WATER AUTHORITY, AFSCME LOCAL 2920, and LAKE SHORE GLOBAL CORPORATION as follows:

A) Legal Relief

1) Compensatory damages in excess of $75,000.00 to which each Plaintiff is found to be entitled;

2) For each and every applicable count this Court finds that Defendant has violated the Lilly Ledbetter Fair Pay Act of 2009, award each Plaintiff his or her back pay for up to two years preceding the filing of the charge, pursuant to 42 USC 2000e-5(e)(3)(B);

3) Liquidated damages in whatever amount each Plaintiff is found to be entitled; and

4) An award of interest, court costs, expert witness fees, and reasonable attorney fees.

B) Equitable Relief

1) An injunction prohibiting any further acts of wrongdoing, discrimination, or retaliation; and;

2) Whatever other equitable relief appears appropriate at the time of final judgment.

Respectfully submitted,
THE RUBINSTEIN LAW FIRM

DATED: APRIL 22, 2021

By: *Jan Jeffrey Rubinstein*
Jan Jeffrey Rubinstein (P57937)
Attorney for Plaintiffs

## JURY DEMAND

All named Plaintiffs hereby demand a jury trial in this matter.

Respectfully submitted,
THE RUBINSTEIN LAW FIRM

DATED: APRIL 22, 2021

By: *Jan Jeffrey Rubinstein*
Jan Jeffrey Rubinstein (P57937)
Attorney for Plaintiff